In the Matter of ABRAM F. ALMOSNINO, an Infant.

City Court of the City of New York, Special Term, New York County, February 6, 1952.

*Irving Kirschenbaum* for Pauline Goldstein, as general guardian, petitioner.

*Anthony V. Profita* for Bondy Almosnino, respondent.

MARKEWICH, J. This is a contested application for change of name of a six-year-old child; petitioner and respondent are, respectively, the mother and father, who were divorced about four years ago. The history of that proceeding and subsequent developments will cast light upon the actual, rather than the professed, attitude of the father toward his child. After separation, respondent commenced an action in Queens County for divorce in August, 1947, in which petitioner was awarded tem-

porary alimony, inclusive of support for the child in her custody. The action was discontinued and a separation agreement entered into in October, which provided for the mother's custody of the infant, weekly visitation by the father, and weekly payments of $5 for support. Apparently a divorce was contemplated, for the terms of the agreement were to survive a decree of divorce. Petitioner went to Mexico with the child in December, 1947, remaining till the following June, and procured such a decree in an action wherein respondent appeared but did not oppose.

Petitioner married anew in March, 1950; she is about to have a second child. The child of the disputants has commenced school. The mother, in a proceeding warmly supported by the stepfather, seeks to give her new name to the infant to relieve him of the difficulties, which require neither detailing nor description to those of intelligence and sensitivity, attendant upon living and moving amongst schoolmates and playmates while bearing a name different from the present family name.

It further appears that, in 1948, both visitation and support ceased. Each side claims this to be the fault of the other: petitioner, that respondent ceased paying, whereupon she forbade visitation, and respondent that he ceased payment in retaliation for the cutting off of the visits. It is immaterial which act precipitated which, for it is certain that the sole attempts to visit since that time have consisted, respondent says, of visits to the street where the boy lived to try to talk to him, and that, in these more than three years, respondent has made no attempt by habeas corpus or otherwise to enforce the visitation provision of the agreement.

Respondent objects strenuously to the change of name, and urges various points. To begin with, though not entirely germane to this proceeding, he raises in his papers the question of validity of the Mexican divorce. At the argument in this proceeding, it was called to his attention that such a point would be of prime interest in a proceeding in the Supreme Court to fix visitation rights; it was suggested that the decision herein be held in abeyance while habeas corpus be availed of. In a quick change of position, he then stated that he believed himself estopped from contesting its validity. He claims he wants full rights of visitation; such rights I am powerless to grant; if he will not go to the proper forum, I am unmoved by that expression as far as this proceeding goes.

He wants " the child raised as his child." He is ready " to provide the infant with a home and parental care." " He

bears a parental affection towards the child." He " has been deprived of the companionship of the said child." He believes that there will be denied to the child " an opportunity to love and respect his natural father." So says the respondent. I do not credit these belated paternal-sounding protestations. For three years or more, there has been no attempt known to any one but respondent to visit the infant; there has been no attempt to enforce visitation — all of this despite two hospitalizations of the boy for surgery in that period. He has paid nothing for support during that time, that is, not until this proceeding commenced, when he promptly resumed payment.

Is it not tragic enough that this innocent child must bear the brunt of his parents' incompatibility without forcing him to bear a continual reminder of his status in the form of the respondent's name? If respondent really regarded the child's welfare, he would be thankful for the substitute provided to take the place of the father he never was. Instead he desires the boy to go through his formative years in the insecurity and rejection of a name different from that of his family, and, even more important, different from the name of the " competitor " for parental affection soon to be born. When he is old enough to understand, he will not thank such a " natural father "; when, some day, he reads what is set down here, he will understand that respondent made him an innocent means of wreaking revenge upon petitioner for daring to find happiness away from respondent. If respondent really wanted to earn eventual love and respect, he would consent to the change of name, as suggested by me, and which he refused to do.

I have gone into this lengthy exposition, castigatory as it may appear to be, because I find that I must deny the application and, most reluctantly, sustain the respondent.

Section 60 of the Civil Rights Law seems to be permissive with respect to who shall make a petition for an infant's change of name; it appears to give discretion to a court upon a proper showing of facts. My learned brother in this court, Mr. Justice BENJAMIN, has, in two reported cases of objection by unworthy fathers, granted similar petitions, in more restrained language than that set forth above, but along the same lines of reasoning: that it was for the welfare of the child (*Matter of Gallagher*, 193 Misc. 305; *Matter of Proman*, 63 N. Y. S. 2d 83).

What did the Legislature intend by a statute which provided that " if the infant be under sixteen years of age the petition *may* be made by *both* his parents, if living * * * "? (Italics supplied.) It may be argued that use of the word " both "

shows that both parents must consent. But this view completely overlooks the use of an equally important word: the permissive "may", which under ordinary circumstances would consign the problem to the discretion of the court to render a judgment in the best interests of its ward. Each word has a purpose, each an intent. "Both" means that the parents have coequal rights in the proceeding, but not to determine and fix the outcome. "May" means that the court makes the decision, its duty being to serve the child's best interests. Any other view practically renders a court powerless; by the mere act of procreation in wedlock, the unworthiest of parents could veto the act of a court attempting, in the most flagrant of cases, to shield a child from the worst of consequences.

While it is true, as indicated above, that the rights of each parent in a proceeding of this type are coequal, it seems to me that the proper interpretation of the word "may" as used in the statute is permissive; if the parents consent they "may" both make the petition; if only one consents, then the application must be on due notice to the other parent and then the court, after considering the views of the respective parents, renders an appropriate decision in its sound discretion, giving paramount consideration to the best interests of the infant.

But there is a long line of cases, in varying situations, which appear to sustain the unequivocal right of the objecting parent to prevent a change of name where the child is under sixteen years of age; the last cited of these discusses the problem at length (*Matter of Epstein,* 121 Misc. 151; *Matter of Cohn,* 181 Misc. 1021; *Matter of Lyons,* 19 N. Y. S. 2d 839; *Matter of Biegaj,* 25 N. Y. S. 2d 85; *De Vorkin* v. *Foster,* 66 N. Y. S. 2d 54; *Matter of Ebenstein,* 85 N. Y. S. 2d 261; *Matter of Nitzberg* v. *Board of Educ. of City of N. Y.,* 200 Misc. 748). These all rank equally; all are decisions of courts of first instance.

I believe the facts in this proceeding would ordinarily compel me to follow the reasoning of Mr. Justice BENJAMIN as reflected in the *Gallagher* and *Proman* cases (*supra*). However, the recent decision by the Appellate Term, First Department, in *Matter of Weiss* (*Blauvelt*) (200 Misc. 241) appears to hold flatly that section 60 of the Civil Rights Law is to be interpreted to the effect that such an application for change of name of an infant under the age of sixteen years must be denied by objection of either parent. Due consideration should also be given to the Second Department case of *Matter of Spitz* (272 App. Div. 1061).

The record on appeal of the *Spitz* case discloses a parent not unlike the father here, who was apparently willing to withdraw his opposition to a change of his children's names in return for release from support and who confessed to acts of rejection of these children. By the decision of the Appellate Division, Second Department, his bare objection was apparently sufficient to defeat the proposed change of name.

The *Weiss* case, insofar as is shown by the record, did not disclose reasons as compelling as those presented here, and which cause me to write as I do. The Appellate Term of this department reversed on the law, interpreting the word " may " in the statute, in effect, to mean " must ". Though, as indicated above, I believe legislative intent to have been to the contrary, and despite the probability that respondent would not appeal from an adverse decision herein, I am compelled to follow the holding in the *Weiss* case, and the petition is, accordingly, denied, but without costs.

But at the same time, conscience compels me to invite an appeal and to hope that our Appellate Term will clarify its *Weiss* decision and distinguish it from the situation presented here or, in the alternative, that the Judicial Council, the Law Revision Commission, or the Legislature will give due study to possible amendment to section 60 of the Civil Rights Law, if such amendment be necessary, in the light of modern social progress in human relations.