Burton S. Sherman, J.
In this application pursuant to article 6 of the Civil Bights Law, the mother of a 12-year-old infant daughter seeks to change the surname of the infant from that of her natural father to that of her stepfather. The stepfather joins in the application and the father, having received timely notice, objects. After an informal hearing at which the parties appeared with counsel, the court directed that further affidavits be submitted incorporating what had transpired at the hearing. The infant daughter was also interviewed by the court privately.
The infant was born in 1960. Her parents were married in 1957 and divorced in 1966. It appears that a separation agreement, entered into prior to the divorce, required the father to make infant support payments. This he has failed and neglected to do up to the time of the hearing, nor has he seen his daughter since 1967. He claims that his former wife has refused to grant him visitation privileges. While his- former wife may not have been co-operative, it would not have required superhuman effort on his part to ascertain his daughter’s whereabouts or, if necessary, resort to the courts for relief. The child has not been spirited away to a foreign jurisdiction but resides and attends school in this city. Moreover, the affidavits reveal that the child’s mother has permanent ties in the neighborhood where she once resided with her former husband. Indeed, the father met his former wife’s present husband at the latter’s place of business in 1971. Despite his declarations of love and affection, the father made no more than token efforts to see his daughter. In short, I find that the infant’s father has failed to support or visit his daughter for over five years.
As to the infant, she lives with her mother, stepfather and two stepsisters. She was about 12 years of age at the time of the hearing and was in the sixth grade at school. She has one older stepsister by a prior marriage of her mother who has adopted, with court approval, the surname of her current stepfather. A younger stepsister, born of the present marriage, naturally bears the family surname. Her mother states that the difference in name causes her daughter embarrassment, harassment and confusion. The infant informed the court that it causes her embarrassment to have a different surname than that of her sisters, *65 especially in school where it causes questions by her classmates. She expressed a desire to change her name.
In matters involving infant name changes, the court stands in loco parentis with respect to such infant and, of course, the best interests of the child are of paramount concern. (Matter of Yessner, 61 Misc 2d 174; Matter of De Jesus, 44 Misc 2d 833; Matter of “ Shipley ”, 26 Misc 2d 204; Matter of Wing, 4 Misc 2d 840; Matter of Wittlin, 61 N. Y. S. 2d 726.) With this in mind, various factors must be balanced.
According to the custom of English-speaking people, each person bears a family name, which is continued from parent to child. And, as a further result of custom, a child bears the surname of his or her father. (Smith v. United States Cas. Co., 197 N. Y. 420 ; 57 Am. Jur. 2d, Name, § 2, p. 276.) Pride of ancestry, parentage and succession is deeply rooted in our society. (Genesis, eh. XXY, verses 29-34; Exodus, ch. XX.) Courts must try, therefore, to preserve the child’s sense of identity and the bond of love and affection between father and child. “ The father of the infant has a natural right to have his son bear his name unless the child’s best interests are adversely affected. Moreover the child should in due course know of his parentage and when he has attained a certain maturity in understanding the circumstances, may of his own volition choose a name differently from his birth * * * 1 Until then the court
will not and should not endeavor to interfere with the usual custom of succession to paternal surname nor foster any unnatural barrier between the father and son.’ ” (Matter of Baldini, 17 Misc 2d 195.) (Also, see, Matter of Pollack, 2 A D 2d 756; Matter of Biegaj, 25 N. Y. S. 2d 85.) Implicit in the aforementioned cases is not only the duty to preserve a bond between father and child, but to refrain from punishing a father for his misconduct towards the infant’s mother by depriving his child of his name. A bad husband does not, necessarily, make for a bad father. (Matter of Otis, 204 Misc. 1073; Matter of “ Shipley ”, 26 Misc 2d 204, supra; Matter of Keach, 51 Misc 2d 1097.)
On the other hand, the best interests of a child may require the court to adopt a more pragmatic approach. The child’s everyday well-being and her current relationship with her present family, her school and her society must be considered. And this may be the prime consideration where a father has destroyed the bond of love and affection with his child by abandonment, failure to support or other misconduct.
“ Where a parent has abandoned his children or fails to visit them for protracted periods of time or contribute to their sup *66 port, where continued use of a name may bring shame and dis- _ grace, where the physical welfare of the child may be adversely affected by a denial of the application or substantial property rights are involved, the Court would have no difficulty in per"mitting the change of name in the best interest of the infant.” (Matter of Wittlin, 61 N. Y. S. 2d 726, 728, supra). Thus, name changes have been granted in a variety of circumstances where there has been an abandonment by a father, a failure of support and the child would benefit socially and psychologically from such change. (Matter of Fein, 51 Misc 2d 1012; Matter of Yessner, 61 Misc 2d 174, supra; Matter of Horn, 21 N. Y. S. 2d 453; Matter of Proman, 63 N. Y. S. 2d 83; Matter of Gallagher, 193 Misc. 305; cf. Matter of Almosnino, 204 Misc. 53.)
In this case, it is not denied that the father has not seen his child for many years and has failed to support her. The child is almost 12 years of age and has been living with her mother, two stepsisters and stepfather continuously for the past four years. She is the only member of this apparently well-integrated family with a different surname. Thus, at home, at school, or in her other social contacts, she must be singled out as different from the other members of her family. Understandably, she wishes the same identity and to be known by the same name as the others. She expressed to the court a desire to change her name and stated that it caused her embarrassment at school to be different. She appeared to be well aware of the implications of such change and mature enough to make a choice. The court is also aware of the fact that the sensitiveness of a girl of her years may well be greater than one more mature. Youth can be cruel and the embarrassment, harassment and confusion which, it is stated, this young girl suffers, are understandable. The application is granted.