OPINION OF THE COURT
Nicholas L. Pitaro, J.
“What’s in a name * * *?” Shakespeare’s famous quotation from Romeo and Juliet notwithstanding, respondent father wants his sons to bear his surname and no other'. Since petitioner mother changed the sons’ surname without the father’s knowledge or consent, the father now seeks redress in the nature of termination of his support obligation. The issue arose as follows: petitioner mother commenced this proceeding for enforcement of a support order made by this court under the Uniform Support of Dependents Law (Domestic Relations Law, § 30 et seq.). On September 28, 1979, the court ordered respondent to pay $50 per month, plus $10 per month on arrears, for the support of his two children. Petitioner alleges that respondent’s last support payment pursuant to the order was made in August of 1980. Respondent has requested that the court terminate his support obligation based on two affirmative defenses to be discussed infra.
The court has considered all papers and proceedings had herein in reaching its decision.
DENIAL OF VISITATION
Respondent contends that petitioner has denied him the right to visit his children. This denial was effectively caused by petitioner’s move with the children from New York to the northwest coast, approximately 11 years ago, *271 first to the State of Washington and then the State of Oregon where they now reside. Respondent states that he cannot afford to travel such a distance and, therefore, has been unable to visit. He further testified in court that petitioner was in New York several years ago but would not let him see the children.
The law has clearly evolved so as to allow suspension of a parent’s support obligation when he or she is wrongfully denied visitation. In Matter of Giacopelli v Giacopelli (62 AD2d 999, 1000), the court held that a “father’s obligation to support his children should be suspended when the mother removes the children to a distant location without apparent justification”. The court, citing Abraham v Abraham (44 AD2d 675), said that such a move of the children does not automatically suspend the support obligation but depends on the facts of each case. It set forth five factors which should be considered in these cases:
(1) effect of the move on visitation
(2) any express provision of separation agreement or divorce decree prohibiting move
(3) justification for moving
(4) length of time between the move and the noncustodial parent’s raising the issue
(5) exercise of visitation rights before the move.
In the case at bar, the court finds that petitioner’s move from New York to the west coast did have a preclusionary effect on respondent’s visitation. Respondent is by trade a carpet mechanic, to whom the cost of cross-country, round-trip flights would not come easily. Petitioner left the marital home in Brooklyn with the children in 1970. She obtained a divorce from respondent in the State of Oregon in 1972. Therefore, there would not have been any express provision prohibiting a move. Also, respondent’s exercise of visitation rights before the move is not relevant in this case because the parties apparently cohabited until the move. The court is not cognizant of the petitioner’s initial motivation in moving to the west coast but is aware that she subsequently remarried there. Petitioner first sued respondent for child support in this court in 1977. The court file indicates that at that time respondent expressed *272 his desire to have custody of the children. Respondent made support payments pursuant to this court’s order for several years thereafter. In 1981, when petitioner filed this enforcement petition, respondent raised the defense of denial of visitation.
In considering these factors the court finds that only respondent’s delay in raising this defense weighs against him. The court file reveals that respondent was only represented by counsel on this case for a short time in 1978, and in his most recent appearance he waived counsel stating that he could not afford the fees.
CHANGE OF NAME
Respondent contends that since petitioner had the children’s surname changed, by ex parte court order, without his knowledge and without notice to him, he should be relieved of his support obligation. In an effort to verify this contention the court contacted the court in the State of Washington which ordered the name change of the children and received a copy of that order and the petition wherein it was requested. Though this court had specifically requested a copy of any affidavit of service in the name-change case, none was received. The order changing the names of the two children does not contain any jurisdictional references or any recitation of any appearance by, default of, or notice to respondent father. Therefore, the court finds respondent’s testimony that he was never notified of the name-change petition totally credible.
There was a question raised before this court as to whether the children had been adopted, but the Assistant Corporation Counsel, petitioner’s attorney, stated in court that it was an order of name change only, not adoption, and the District Attorney of Jefferson County, Oregon, wrote in a letter to the clerk of this court dated September 24,1981, “The children were not adopted by the petitioner’s present husband.”
The name-change order was signed on November 19, 1979, and was based on the sworn statement of petitioner, whose name was then Michaele G. Rand, and the unsworn *273 statement of the oldest child, Walter Michael Stevenson, who was then approximately 14 years of age. The petition stated only that the children have customarily used the surname Rand since 1970. It should be noted that the petitioner no longer uses the surname to which the children’s names were changed. She is now before this court as Michaele Good.
Petitioner argues that only an adoption would abrogate the natural father’s support obligation, not merely a name change. But the court is aware of at least one precedent for suspending a support obligation based on the change of the child’s name. In Rosemary N. v George B. (103 Misc 2d 1036), the Family Court found a teenage daughter’s change of name from her father’s to her stepfather’s, in conjunction with the refusal to see her father, to constitute an abandonment of him. Therefore, his support obligation was suspended. The fact that the daughter was 18 years old may have been a factor in the court’s decision, even though a parent is obligated to support an unemancipated child until age 21. (Family Ct Act, § 413.)
The courts have long recognized the importance of a child’s use of the father’s surname in our society. The court takes judicial notice that this custom has persisted for centuries and undoubtedly carries great significance in the father-child relationship; it is easily apparent that this custom strengthens the relationship between the father and child which is not as biologically obvious as the relationship between the mother and child. (See Matter of Robinson, 74 Misc 2d 63.)
Case law exists which has elevated this custom to the level of a paternal right to have the child bear the father’s surname. In Galanter v Galanter (133 NYS2d 266), the court referred to this custom as a right. In Matter of Baldini (17 Misc 2d 195), it was called a father’s natural right. (See, also, Matter of Yessner, 61 Misc 2d 174; Matter of Reach, 51 Misc 2d 1097; Matter of Seif, 40 Misc 2d 596.)[2]
*274 Even though a common-law right of a father to have his child use his surname seems to have developed,[3] the courts have concurrently held that this right is not absolute and may be abrogated if the child’s best interest so requires (Matter of Yessner, supra; Matter of Reach, supra; Matter of Seif, supra).
Although a child’s name may be changed if it is in his best interest, there must be compelling reason to make such a change (Matter of Fein, 51 Misc 2d 1012). Embarrassment from having a different name than the mother and inconvenience therefrom to the mother have been held to be an insufficient basis for changing a child’s name (Matter of Seif, supra). In the case at bar, the petitioner stated no compelling reason for the change in her petition requesting the name change in the State of Washington. In fact the only reason given was that the children had been using a different name already. Ironically, the children once again have a different name than the mother who has remarried.
The issue before the court is whether the respondent is entitled to have his support obligation suspended because the petitioner already unilaterally changed the children’s surname by court order without notice to him.[4] The court finds that the facts of this case warrant a suspension of respondent’s support obligation. It is clear to the court that petitioner has succeeded in severing the father-son relationship that respondent could have with his children by having their names changed unilaterally and by effectively denying visitation as discussed supra. Nevertheless, she seeks continued support for the children from their natural father. This court finds that respondent has proved his affirmative defenses to the support petition. Therefore, the order of support is hereby suspended.

. At least one court has held contra, that there is not a natural right to have a child bear one’s name, but the court said that a child’s name signifies his relationship to another and the child’s best interest may preclude changing the child’s name if a change would damage that relationship. (Matter of Hinrichs v Beinecke, 41 Mise 2d 422.)

. Except see Matter of “Shipley" (26 Mise 2d 204) which held that the custom has not risen to a common-law right.

. In New York a petition by one parent to change an infant’s name must be on notice to the other parent. (Civil Rights Law, § 62.)