OPINION OF THE COURT
Joseph J. Maltese, J.
The mother of a five-year-old boy, Anthony, has petitioned this court to have his surname changed from her maiden name (Sakaris) to that of a man (Steinman) with whom they both reside. The mother and Ari Steinman have not been married nor is he the boy’s natural father. Ms. Sakaris and Mr. Steinman have had two other children between them, Joanna and Jacob. Joanna and Jacob use the surname of their natural father, Steinman. The petitioner, herself, continues to use her maiden name of Sakaris, but nevertheless petitions this court to change her son’s name to Steinman contending that they hold themselves out to be a family unit.
It should be noted at the outset that the affidavit submitted by Ari Steinman recites Richmond County, New York, as the location where the affidavit was executed yet the notary witnessing the affidavit lists himself as a New Jersey notary.
General Construction Law § 12 provides that "[w]hen an affidavit is authorized or required it may be sworn to before any officer authorized by law to take the acknowledgement of deeds in this state”. Real Property Law § 298 enumerated the various public officials of this State that may witness a document for filing or recording. While it does mention a notary public, clearly a notary public in New Jersey may not acknowledge a document for filing in New York where he witnessed the execution of said document in New York. While a New Jersey notary may witness or acknowledge in New Jersey a signature upon a document for filing in New York pursuant to Real Property Law § 299, he may not do so in New York. Moreover, "any person who holds himself out to the public as being entitled to act as a notary public * * * without having first been appointed as a notary public * * * shall be guilty of a misdemeanor” (Executive Law § 135-a [1], [2]).
Accordingly, the affidavit is technically defective on its *659 face; however, for the purpose of this application the court will look beyond this defect to the substance of this application.
In his affidavit, Mr. Steinman states that he has no objection to the child assuming his last name "and in fact, I have made the decision with Melanie Sakaris, to seek a name change for Anthony.” He continues: "At present, it would be impractical for me to marry the child’s mother or for me to adopt the child, although, it is possible that I may do one or both of these things in the future. Although we are not married, we hold ourselves out as a couple, and live together with the three children as a family unit.”
The petitioner, Melanie Sakaris, the boy’s mother, states in her verified petition that:
"3. There is no adjudicated father of the child. MC is the putative father of the child. MC’s whereabouts are unknown. His last known address was * * * Staten Island, New York. MC has no relationship with the child and has never exercised any parental rights in regard to the child. He is not listed on the child’s birth certificate. [Name and address deleted in this decision.]
"4. Anthony Joseph lives with his mother, the petitioner her fiance, Ari Steinman and his two siblings, Joanna Steinman and Jacob Steinman, in Staten Island, N.Y.”
Ms. Sakaris further states in her petition that: "The infant [5 years old] insists that he also be allowed to use the name of his stepfather and in fact refers to himself as Anthony Stein-man. The infant is aware that his siblings are referred to as Steinman, and has on many occasions asked that he be identified as a Steinman. He has been adamant in this regard and in fact has become quite upset when his teachers or other person call him by his mother’s maiden name.”
The petitioner also asserts that: "While [she] continues to use her maiden name, Melanie Sakaris, she desires that the child be allowed to legally assume the name of Anthony Joseph Steinman. Since the Petitioner, and Mr. Steinman as well as the three children all live together as a family unit, it makes sense that all of the children use the same name. Further, since Mr. Steinman has no objection to the infant using his name, and in fact is acting in the capacity of stepfather to Anthony Joseph, there is no obstacle to the Court granting this petition.”
Although the mother’s affidavit alleges that the putative *660 father’s whereabouts are unknown, it is also alleged that copies of the instant petition for a name change have been served upon M.C., the putative father, and that no response has been received from him concerning this proceeding. Assuming the petition to be true and that the putative father has shown no interest nor assumed any responsibility for the child, for the purpose of this application, the putative father will be deemed to have abandoned any rights he may have had concerning the infant.
In New York, the law permitting an individual to change their name is both liberal and long established in the common law as well as codified in the statutes. Notwithstanding its generally relaxed application, there are limitations to prevent the misuse of this procedure and those limitations are the subject of this decision.
COMMON-LAW RIGHT TO CHANGE NAME
Under common law, a person is free to assume any name he or she chooses, in the absence of fraud, misrepresentation or interference with the rights of others (Smith v United States Cas. Co., 197 NY 420; Matter of Linda Ann A., 126 Misc 2d 43 [Sup Ct, Queens County 1984]). No judicial proceeding is necessary to change a name; it can be made effective through simple usage or habit (Matter of Halligan, 46 AD2d 170; see also, Matter of Ellerby, 99 Misc 2d 691 [Civ Ct, Kings County 1979]).
STATUTORY PROCEDURE TO CHANGE A NAME
By adopting article 6 of the Civil Rights Law, the New York State Legislature provided a parallel procedure by which an individual may change a name which is in addition to the common-law method and not a substitute or replacement. While an individual is permitted to adopt a new name simply by using it, such usage is conditioned upon its use being innocent of fraud, deceit or to avoid a just obligation. Civil Rights Law § 60 does not diminish an individual’s common-law right to select an appropriate name; however it does define the exclusive mechanism for a court-ordered name change. (Matter of Bell v Bell, 116 AD2d 97 [3d Dept 1986].)
When a court is petitioned to change the name judicially, it is within the court’s discretion to determine if the change is warranted under all of the circumstances. In addition, the *661 court is duty bound to examine all the facts including the reasons expressed for the change and the name sought to be approved (Matter of Douglas, 60 Misc 2d 1057 [Sup Ct, NY County 1969]).
Courts have a wide latitude of discretion in granting name changes; however, it is not without limit. In Matter of Halligan (46 AD2d 170 [4th Dept 1974], supra), the Appellate Division reversed the trial court’s denial of a name change because the Judge sought to impose a burden of persuasion upon the petitioner beyond that required by the statute. The Court noted (at 171): "Under the common law a person may change his or her name at will so long as there is no fraud, misrepresentation or interference with the rights of others (Smith v. United States Cas. Co., 197 N. Y. 420, 428-429; Matter of Wing, 4 Misc 2d 840). The statute affirms this right and the two procedures exist side by side supplementing each other (Smith v. United States Cas. Co., supra). ”
Notwithstanding a person’s common-law right to change his or her name, the court has an obligation to ascertain that the information supplied is correct and that the change of name is justified. (See, Matter of Stempler, 110 Misc 2d 174 [Sup Ct, Nassau County 1981]; Matter of Thompson, 82 Misc 2d 460 [Civ Ct, NY County 1975].)
CRITERIA FOR CHANGING A NAME
When Civil Rights Law § 63 is used, the court is required to be satisfied: (1) "that the petition is true”, (2) "that there is no reasonable objection to the change of name proposed”, and (3) "if the petition be to change the name of any infant, that the interests of the infant will be substantially promoted by the change”.
If the petitioner meets the three-pronged requirement, then the court shall make an order authorizing the petitioner to assume the name proposed. However, the case law interpreting what is a "reasonable objection” is widely dissimilar. Most decisions arise from courts of original jurisdiction and are seldom appealed for review by higher courts.
Accepting the uncontroverted facts in this petition, this court must determine only if there are any reasonable objections to this name change and since there is an infant involved, if such a name change is in the best interests of the child.
The potential for fraud is a primary reason for denying the *662 requested name change, particularly where it could lead to financial abuse or misrepresentations in society.
The court in Matter of Szemplinski (134 Misc 2d 162 [Civ Ct, Richmond County 1986]) denied the petition to change the name of a child to that of a deceased putative father when the purpose was to avoid scrutiny by the Social Security Administration as to whether the son was actually entitled to Social Security benefits.
In Matter of J. O. T. (120 Misc 2d 817, 818 [Fam Ct, Kings County 1983]) the court stated: "It is apparent from the clear intent of the statutory scheme of the Civil Rights Law, that the court must be assured that the desired name change is not intended to defraud, is free of misrepresentation, and will not interfere with the rights of others. (Matter of Halligan, 46 AD2d 170.) The court must also be satisfied that the intended name change is not of such a nature as to confuse or mislead the public. (Matter of Thompson, 82 Misc 2d 460.)”
Where a petition was made to change the name of an individual who had gone through bankruptcy and now felt that the stigma attached to the name hurt his opportunities to continue in his business, the court granted the requested name change but noted that "[c]ourts are duty bound to prevent events which might result from a change of name, and to discover any attempt at fraud, duplicity or chicanery as a result of the change of name” (Matter of Stempler, 110 Misc 2d 174 [Sup Ct, Nassau County 1981], supra).
If a court determines that a change of name will foster fraud or other illegality it is not only free to withhold its imprimatur and deny the petition, it is bound to do so. (See, Matter of A. D., 129 Misc 2d 550 [Sup Ct, Suffolk County 1985].)
That a name change results in some confusion alone is not sufficient reason to deny the application. "[C]onfusion is a normal concomitant of any name change” (Matter of Halligan, 46 AD2d 170, 172 [4th Dept 1974], supra).
AGAINST PUBLIC POLICY
The broad concept of public policy has been applied generally and without great specificity ranging from general name usage in society to evasion of restrictive statutes to avoiding legal procedures. Here the elements to be considered by the courts are almost limitless and the Court of Appeals has counseled restraint on the part of Judges in substituting their *663 own moral judgments and standards for those of the petitioners.
However, in Matter of Linda Ann A. (126 Misc 2d 43, 45 [1984], supra) the court denied an unmarried woman’s petition to use the name of her married lover as it misrepresented their relationship to the world. Moreover, the court stated: "To allow such holding out would also undermine the considerations of public policy which underlay the abolition of common-law marriages in this State.” (See also, Matter of Carol B., 81 Misc 2d 284 [Wayne County Ct 1975].)
In Matter of A. D. (supra), the court elected not to permit the mother of an infant born of artificial insemination to adopt the name of her female companion where it would create confusion and a false impression.
The recognition of common-law marriages was repealed in this State in 1936. Notwithstanding same, some people have by common-law right adopted the surname of their live-in partner without the benefit of marriage.
BEST INTERESTS OF THE CHILD
The instant petition presents the contention that the best interests of the child would be to permit the use of his mother’s fiancé’s surname of Steinman in light of the fact that the boy’s two half-siblings use their natural father’s name of Steinman. This is a consideration based on social convenience as presumably all three children may be attending the same school and have similar friends.
However, it should be noted that Ari Steinman is not Anthony’s "stepfather”, as is wrongfully alleged in the petition. A "stepfather” is "[t]he husband of one’s mother by virtue of a marriage subsequent to that of which the person spoken of is the offspring.” (Black’s Law Dictionary 1413 [6th ed 1991].)
While an adult has a general right to assume a new name, the court must give greater protection when it is the name of an infant sought to be changed. In these matters, the court stands in loco parentis with respect to the infant and the paramount concern must be the best interests of the child. (Matter of Robinson, 74 Misc 2d 63 [Civ Ct, NY County 1972]; Matter of A. D., 129 Misc 2d 550 [Sup Ct, Suffolk County 1985], supra.)
Neither parent has a superior right to determine the surname of a child and the question is always whether the best *664 interests of the child will be served by the proposed change. (Matter of Cohan v Cunningham, 104 AD2d 716 [4th Dept 1984]; State of New York ex rel. Spence-Chapin Servs. v Tedeno, 101 Misc 2d 485 [Sup Ct, NY County 1979]; see, Matter of Goldstein, 104 AD2d 616.)
It is generally held that a request to change an infant’s name should be approved or disapproved solely on the basis of the infant’s best interest; however, where there are peripheral factors, exceptions are permitted. (See, Matter of Yessner, 61 Misc 2d 174 [Civ Ct, Kings County 1969], where the infant’s father was convicted and incarcerated for the manslaughter of his maternal grandfather, it was held that it was in the infant’s best interests to assume the mother’s maiden name.)
In Matter of Goldstein (104 AD2d 616 [2d Dept 1984], lv denied 64 NY2d 602, supra) the Court found it reasonable to change a daughter’s name from the father’s surname to the mother’s maiden name, where the father himself had "abandoned” his own name and used a different name for social and business purposes.
The Family Court in Matter of Good v Stevenson (113 Misc 2d 270 [Fam Ct, Queens County 1982]) ruled that a child’s surname may be changed if it is in the best interest of the child; however, there must be a compelling reason to make such a change.
In Galanter v Galanter (133 NYS2d 266 [Sup Ct, Kings County 1954]) the court ruled that if the mother could establish that the interests of the child will be substantially promoted by changing the child’s name to the name of the mother’s present husband such a petition might well be granted. (See also, Matter of Williams, 86 Misc 2d 87 [Civ Ct, Queens County 1976], where natural father had continued to pay support, but had no contact with the children and the legal stepfather had, in fact, been the real father. The court found that the children should be permitted emotional security and symbolic value available from the proposed name change to that of their stepfather.)
CONCLUSION
It would appear that it is not in the best interests of this child to change his surname to that of his mother’s fiancé. Moreover, it is against the public policy of this State to grant this name change petition. Here, the petitioner is unmarried and uses her maiden name of Sakaris. Even if she were *665 married, it is well settled that the petitioner could continue to use her maiden name and she is obviously not compelled to adopt the surname of her husband. (See, Matter of Halligan, 46 AD2d 170 [4th Dept 1974], supra; Rio v Rio, 132 Misc 2d 316.) However, it does become an element to be considered by the court when the petitioner presents to this court a petition seeking to change the name of her son to that of her "fiancé” while she retains her maiden name.
Although it is easy to understand the confusion that will result for the boy in school with a name different from that of his two half-siblings, this court will not give its approval for the name change of a five-year-old boy merely because it would be "impractical”, as Mr. Steinman claims, to marry the child’s mother or adopt the boy.
Petitions on behalf of infants are not viewed with the same liberality as those for adults. The court must insure that the child’s "best interests” are preserved. This relationship from which his mother and her fiancé have produced two other children born out of wedlock should not be given this court’s official approval without benefit of marriage or adoption of the child. In effect these parties are living in a common-law marriage which was outlawed in 1936. This court as a matter of public policy cannot condone or assist in this life-style by its approval of a name change to give the appearance of a family. (See, Matter of Linda Ann A., 126 Misc 2d 43 [Sup Ct, Queens County 1984], supra.) Moreover, should the boy’s mother decide to end this relationship, the boy would be left with the name of her former fiancé who is neither his natural nor adopted father.
The only issue before this court is approval of the name change petition for this infant. It is not for this court to determine that the parties should marry or that Ari Steinman should avail himself of the procedures available to adopt the boy. However, it is also not the function of this court to assist the petitioner to avoid a proceeding in the Family Court or to direct an individual to assume financial responsibility of an infant. To grant this petition would most assuredly result in fraud, misrepresentation and confusion.
At age five, Anthony cannot be deemed to have made a mature decision concerning the use of a name.
This court finds that there are reasonable objections to the change of name proposed: First, it would be misleading and perhaps fraudulent. Second, there would be unlimited confu *666 sion resulting from a child having the same name as a man unrelated to him by blood or adoption and a mother with still a different name. Such a change would certainly add to the confusion relating to the paternity of the child which is not in his best interests. Third, such a change appears to be an attempt to avoid a legal adoption which will impose a duty of support upon the adoptive parent.
Accordingly, this application for a name change is denied.