2001 UT 70

**In the Matter of the Application of David Lynn PORTER, Petitioner.**

**No. 20000908.**

Supreme Court of Utah.

Aug. 10, 2001.

William R. Hadley, Murray, for petitioner.

WILKINS, Justice:

¶ 1 The issue before us is whether the trial court erred in denying David Lynn Porter's petition to change his name to "Santa Claus." We conclude it did and reverse.

## BACKGROUND

¶ 2 David Lynn Porter petitioned the district court to change his name to "Santa Claus" pursuant to section 42–1–1 of the Utah Code. On August 10, 2000, the district court conducted a hearing at which Porter appeared with counsel and presented evidence in support of his petition. Porter testified he desired to be known as "Santa Claus" for purposes of business and charity work. After the hearing, the district court issued a Memorandum Decision and Order dated August 16, 2000, denying Porter's request. The court found no "improper purpose" or "inappropriate intention" on the part of the petitioner, and concluded there was no "legal reason" why the request should be denied. Nonetheless, the district court denied the petition. In support of this decision, the court said that permitting Porter to change his name to Santa Claus "would likely create confusion, misunderstanding, . . . allow for substantial mischief," and might cause a "substantial chilling effect for a person or entity otherwise entitled to exercise their access to the courts," who would be faced with the prospect of suing Santa Claus.

¶ 3 Porter asked the court to reconsider its order denying the petition to change his name to Santa Claus, or alternatively to allow him to change his name to "Kris Kringle." This request was denied for the same reasons as the prior petition. Porter appeals.

## STANDARD OF REVIEW

¶ 4 We review a trial court's decision to grant or deny a petition for a name change under an abuse of discretion standard. *See In re Cruchelow,* 926 P.2d 833, 834 (Utah 1996). In *In re Cruchelow* we also delineated the scope of permitted discretion for cases involving a petition for name change, saying that "although a trial court normally has wide discretion in matters of this type, the court must show some substantial reason before it is justified in denying a petition for a name change." *Id.*

## DISCUSSION

¶ 5 In order to legally change one's name, a petitioner must comply with section 42–1–1 of the Utah Code, which provides:

Any natural person, desiring to change his [or her] name, may file a petition therefor in the district court of the county where he [or she] resides, setting forth:

(1) The cause for which the change of name is sought.

(2) The name proposed.

(3) That he [or she] has been a bona fide resident of the county for the year immediately prior to the filing of the petition.

Utah Code Ann. § 42–1–1 (1998). Once the petition is filed, section 42–1–2 requires the district court to

order what, if any, notice shall be given of the hearing, and after the giving of such notice, if any, may order the change of name as requested, upon proof in open court of the allegations of the petition and that there exists proper cause for granting the same.

Utah Code Ann. § 42–1–2 (1998).

¶ 6 In this case, the petitioner complied with the three requirements of section 42–1–1. Porter filed a petition in the district court explaining that he wanted to change his name to "Santa Claus" because he "resembles the fictional character Santa Claus and does numerous [charitable and business] activities in the Santa Claus persona, and [that] the name change is for these functions and public relations purposes." He also indicated that he had been a Salt Lake County resident for the year prior to filing the petition.

■ ¶ 7 We turn therefore to the requirements of section 42–1–2. Petitioner argues, inter alia, that the district court failed to follow section 42–1–2 because it failed to articulate a reason for denying the petition.[1] The plain language of section 42–1–2 requires the district court to determine, among other things, whether the petitioner has presented adequate proof that proper cause exists for granting the name change. If the district court concludes that a petitioner has not presented proper cause, the district court "must show some substantial reason before it is justified in denying a petition for a name change," and "the trial record must contain factual support for the trial court's denial of a petition for a name change." *In re Cruchelow*, 926 P.2d at 834. A substantial reason may exist when there is factual proof of an "unworthy motive, the possibility of fraud on the public, or the choice of a name that is bizarre, unduly lengthy, ridiculous or offensive to common decency and good taste." *Moskowitz v. Moskowitz*, 118 N.H. 199, 385 A.2d 120, 122 (1978), *cited in In re Cruchelow*, 926 P.2d at 834. "[U]nsupported generalizations and speculation do not constitute a cause shown to deny a change of name." 57 Am.Jur.2d *Name* § 22 (1988), *cited in In re Cruchelow*, 926 P.2d at 834.

■ ¶ 8 The purpose of these two statutes bears upon our analysis regarding whether proper cause exists to grant a name change. Statutes similar to sections 42–1–1 and–2 are recognized to merely provide a codified process to aid an individual's common law right to adopt another name at will. *In re Cruchelow*, 926 P.2d at 834; *see also In re Knight*, 36 Colo.App. 187, 537 P.2d 1085, 1086 (1975); *Moskowitz*, 385 A.2d at 122. The statutory procedure benefits the petitioner and society by producing a record of the change. *In re Cruchelow*, 926 P.2d at 834. Consequently, applications under the statute should be encouraged and " 'should generally be granted unless sought for a wrongful or fraudulent purpose.' " *Id.* (quoting *Isom v. Circuit Court of the Tenth Jud. Circuit*, 437 So.2d 732, 733 (Fla.Dist.Ct.App.1983)).

■ ¶ 9 The reasons offered by the district court for denying Porter's petition included that the name "Santa Claus" would likely "create confusion, misunderstanding and intended or unintended, could allow for

---

1. In his brief, Porter also argues that the hearing held August 10, 2000, was not in "open court" as directed by section 42–1–2, and that the trial court failed to "offer evidence or testimony" supporting the finding that the name change may cause "substantial mischief." Porter is mistaken on both points. The hearing held August 10, 2000, although in chambers, was on the record and satisfies the requirements of the statute that the hearing on the petition be held in open court. Furthermore, although we disagree with the trial court's analysis of the legal import of allowing Porter to change his name to Santa Claus, the burden never falls on the trial court to present evidence on a question before it.

substantial mischief." The district court also feared that the name could cause a substantial chilling effect for persons otherwise entitled to exercise access to the courts but who would be hesitant to sue Santa Claus.

¶ 10 However, the record contains insufficient factual support for the district court's denial of Porter's petition. In fact, the record below contains only factual support for granting the name change. The district court found that "the testimony given by the petitioner did not indicate to the Court that the name was being sought for any improper purpose." The district court admitted it saw no "legal reason upon which [the] Court should prohibit the requested name."

¶ 11 On the record before us, we simply disagree with the district court that the likelihood of confusion, misunderstanding, or substantial mischief is sufficient to deny the petition, nor is the concern that some may be unwilling to sue a person named Santa Claus sufficient. The record does not contain any evidence to support these concerns. Porter's proposed name may be thought by some to be unwise, and it may very well be more difficult for him to conduct his business and his normal everyday affairs as a result. However, Porter has the right to select the name by which he is known, within very broad limits. Significantly, Porter already tells others that he is Santa Claus. Allowing him to legally change his name to reflect his practice of doing so is more likely to avoid greater confusion than to create it by making Porter legally responsible for his actions in the name Santa Claus.

¶ 12 Because the district court did not find any wrongful or fraudulent purpose for seeking the name change, nor any "improper purpose" or "inappropriate intention" on the part of the petitioner, and because the district court concluded that no "legal reason" existed to deny the petition, we conclude that the district court exceeded the permitted scope of discretion afforded it in denying Porter's petition.

¶ 13 The order of the district court is reversed. The case is remanded for entry of the necessary order changing petitioner's legal name to Santa Claus forthwith.

¶ 14 Justice DURHAM and Justice DURRANT concur.

RUSSON, Associate Chief Justice, dissenting:

¶ 15 I dissent from the majority opinion. I would affirm the trial court's ruling denying David Lynn Porter's ("Porter") petition to change his name to "Santa Claus."

¶ 16 Sections 42–1–1 and–2 of the Utah Code "provide a codified process to aid an individual's common law right to adopt another name at will." *In re Cruchelow*, 926 P.2d 833, 834 (Utah 1996). As the majority correctly notes, the statutory procedure benefits the petitioner and society by producing a record of the name change, and consequently, applications for name changes under sections 42–1–1 and–2 should be encouraged and "should generally be granted unless sought for a wrongful or fraudulent purpose." *Id.*

¶ 17 However, although the primary reason for denying a requested name change application is fraud, requesting a court to approve a name change requires additional considerations not mentioned by the majority opinion. As the Ohio Court of Appeals has aptly noted:

A name change application becomes subject to judicial scrutiny because the applicant is requesting court approval of the name change. "An inevitable by-product of the statutory process is the result that the judicial imprimatur is placed upon the change of name lending it the aura of propriety and official sanction."

*In re Bicknell*, Nos.2000–07–140, 2000–07–141, 2001 WL 121147, at *3, 2001 Ohio App. LEXIS 650, at *7–8 (Ohio Ct.App. Feb. 12, 2001) (quoting *In re Linda Ann. A.*, 126 Misc.2d 43, 480 N.Y.S.2d 996, 997 (App.Div. 1984)). Because of these considerations, many courts in other jurisdictions have included a review of public policy considerations when ruling on a statutory name change application.[1] *See, e.g., In re Applica-*

1. Moreover, courts have also denied petitions for requested name changes, even under a statute

providing that the court shall grant such an application unless it finds an intent to defraud or

*tion of Pirlamarla,* 208 N.J.Super. 112, 504 A.2d 1238, 1241 (Law Div.1985) ("Any individual ... should be allowed to adopt a new name 'except for fraudulent or criminal purposes,' *In re Application of Jackson,* 177 N.J.Super. 591, 427 A.2d 139, 140 (Law Div. 1981), *or unless there is an overriding social policy which militates against the change."* (emphasis added)); *In re Bicknell,* 2001 WL 121147, at *3, 2001 Ohio App. LEXIS 650, at *7–8 (holding that the meaning of the term "proper" in relation to a statutory name change does not mean only that the change is not requested for fraudulent purposes, but also that the requested name change is consistent with public policy); *In re Harris,* 707 A.2d 225, 227 (Pa.Super.Ct.1997) ("[T]he court must act in such a way as to 'comport with good sense, common decency and fairness to all concerned *and to the public.'* " (emphasis added) (quoting *Petition of Falcucci,* 355 Pa. 588, 50 A.2d 200, 202 (1947))); *see also In re Sakaris,* 160 Misc.2d 657, 610 N.Y.S.2d 1007, 1011–12 (Civ.Ct.1993) (dismissing requested name change application on the ground that granting the application would "undermine ... considerations of public policy"); *In re Linda Ann. A.,* 480 N.Y.S.2d at 997 (dismissing the petitioner's requested name change application on "public policy" grounds). Like the above courts, I would hold that in addition to a determination that the requested name change is not sought for a wrongful or fraudulent purpose, sections 42–1–1 and–2 allow for judicial scrutiny regarding whether the name change is consistent with public policy.

¶ 18 Under this standard, the trial court's ruling denying Porter's application to change his name to "Santa Clause" or, alternatively, to "Kris Kringle" must be affirmed. Indeed, in *In re Name Change of Handley,* 107 Ohio Misc.2d 24, 736 N.E.2d 125, 126 (Prob.Ct. 2000), a case virtually identical to the case at hand, the trial court denied the petitioner's request to change his name to "Santa Robert Clause." In doing so, the court stated:

[T]here is an economic value to the name of Santa Claus. The court finds no fraudulent intent of the petitioner to take advantage of the economic value for the use of the name. However, the court finds public policy reasons to deny the petitioner's request, particularly the interference with the rights of others. The petitioner is seeking more than a name change, he is seeking the identity of an individual that this culture has recognized throughout the world, for well over one hundred years. Thus, the public has a propriety interest, a propriety right in the identity of Santa Claus, both in the name and the persona. Santa Claus is really an icon of our culture; he exists in the minds of millions of children as well as adults.

The history of Santa Claus ... is a treasure that society passes on from generation to generation, and the petitioner seeks to take not only the name of Santa Claus, but also to take on the identity of Santa Claus.... [T]he court believes it would be very misleading to the children in the community, particularly to the children in the area [where] the petitioner lives, to approve the applicant's name change petition.

*Id.* at 126–27.

¶ 19 In the instant case, the trial court, in denying Porter's application to change his name to "Santa Claus," noted similar public policy concerns:

Santa Claus is a fictional character that has been portrayed publicly for many, many years. The court takes *judicial notice* of the fact that to allow the petitioner to adopt the name Santa Claus, even for the legitimate purposes that he suggests, would likely create confusion, misunderstanding and intended or unintended, could allow for substantial mischief.

. . . .

Because the name Santa Claus is associated with a mystical and fictional character, but widely known, substantial confu-

mislead, where the name requested is racist, obscene, or likely to provoke violence, *see In re Application of Dengler,* 287 N.W.2d 637, 639 (Minn.1979), where the requested name change would imply a conferring of a title of nobility or

superior rank, *see In re Thompson,* 82 Misc.2d 460, 369 N.Y.S.2d 278, 279 (Civ.Ct.1975), and where the petitioner seeks to change his or her name to a numeral. *See In re Ritchie,* 159 Cal. App.3d 1070, 206 Cal.Rptr. 239, 241 (1984).

sion would likely result and the ability of third persons to make reference to "Santa Claus" may be prohibited should the petitioner be allowed to change his name.

(Emphasis added.)

¶ 20 Accordingly, as the trial court indicated, and as other courts have held, allowing Porter to take the name of Santa Claus and, by doing so, to take on the identity and persona of Santa Claus—an icon of our culture existing in the minds of millions of children and adults—would certainly be against public policy. Accordingly, I would hold that the trial court acted well within its discretion in denying petitioner's application.

¶ 21 Chief Justice HOWE concurs in Associate Chief Justice RUSSON's dissenting opinion.