OPINION
Appellant, Richard Clark Maloney, appeals a decision of the Butler County Court of Common Pleas, Probate Division, denying his application for a name change. We affirm the decision of the trial court.
Appellant, a fifty-year-old biological male, is allegedly a transsexual suffering from gender dysphoria, a psychological gender-identity disorder.[1] Shortly after ending his marriage of twenty-two years, appellant began seeing Dr. Michael Miller, a psychiatrist, who treated him for depression. Appellant was later diagnosed by Dr. Barbara G. Brewer, a licensed psychologist, as a transsexual with gender dysphoria.
On March 20, 2000, appellant filed an application to change his name to Susan Louise Maloney. The application identified the reason for the name change as "[r]equirement [for] sexual reassignment surgery." At a hearing before a magistrate, appellant testified that a pre-requisite for gender reassignment surgery is that he undergo a "real-life experience" in which he lives his life as a female for a year. Appellant testified that he had been taking female hormones for a year and a half and had just begun the real-life experience. At the time of the hearing, appellant was not scheduled to undergo gender reassignment surgery.
The magistrate issued a written decision denying the name change request, to which appellant filed objections. Pursuant to Civ.R. 53(4)(b), the trial court held a hearing on the objections. At that hearing, Dr. Brewer testified that, at the time she began treating appellant, he was socially isolated, lonely and having difficulties with his two adult children. Dr. Brewer stated that when she first met appellant, he presented himself as a male who was very conflicted about his sexual identity. Appellant eventually began cross-dressing and would present himself to her as "Susan." After two and a half years of psychotherapy, she and appellant made the decision that appellant would begin living as a woman. Dr. Brewer testified that appellant continues to be treated for depression and anxiety.
According to Dr. Brewer, appellant is a true transsexual and a name change would be therapeutic for him. She testified that it is important for transsexual males to have a female-identified name when beginning the real life experience, both for self-esteem purposes, and for ease of presenting oneself in society.
Appellant testified that he desired the name change so that he could get new identification documents to facilitate his real life experience. Appellant stated that without the legal name change he would encounter difficulty changing his name on credit cards and bank accounts. He testified to one embarrassing experience where he had to show his driver's license with his male-identified name when he presented himself as a female at an airline ticket counter. The incident required that he discuss his psychological condition with complete strangers. He also speculated that his male- identified name will cause similar embarrassment when presenting identification to future employers.
The trial court affirmed the magistrate's denial of the name change request, but substituted its own findings of fact and conclusions of law for those of the magistrate. The trial court concluded that the facts set forth in the application, and the proof offered in support of the application, did not show a reasonable and proper purpose for granting appellant's request for a name change. Appellant appeals the trial court's decision, raising the following three assignments of error.[2]
Assignment of Error No 1:
 THE TRIAL JUDGE ERRED TO THE PREJUDICE OF THE APPLICANT-APPELLANT IN FAILING TO APPLY THE CORRECT LEGAL STANDARD FOR ALLOWING NAME CHANGES.
Assignment of Error No. 2:
 THE TRIAL JUDGE ABUSED HIS DISCRETION IN FINDING THAT THE PSYCHOLOGICAL NEED FOR THE REQUESTED NAME CHANGE IS OUTWEIGHED BY ALLEGED PUBLIC CONFUSION THAT THE JUDGE FOUND WOULD RESULT FROM THE NAME CHANGE.
Assignment of Error No. 3:
 THE TRIAL JUDGE'S DECISION DENYING MR. MALONEY THE USE OF THE NAME CHANGE STATUTE IS UNCONSTITUTIONAL.
 An Ohio resident may change his or her name either through a judicial proceeding pursuant to R.C. 2717.01, or by the common-law method of simply adopting a new name, provided the change is not made for fraudulent purposes. Bobo v. Jewell (1988), 38 Ohio St.3d 330, 333, citing Pierce v. Brushart (1950), 153 Ohio St. 372, 380. The statutory name change procedure is in addition to the common law method, and does not abrogate it. State ex rel. Robinson v. Clark (1994), 91 Ohio App.3d 627, 629. R.C. 2717.01(A) governs statutory adult name changes and states in pertinent part:
 A person desiring a change of name may file an application in the probate court of the county in which the person resides. The application shall set forth that the applicant has been a bona fide resident of that county for at least one year prior to the filing of the application, the cause for which the change of name is sought, and the requested new name.
***
 Upon proof that proper notice was given and that the facts set forth in the application show reasonable and proper cause for changing the name of the applicant, the court may order the change of name. (Emphasis added.)
 The language of the statute is permissive, vesting discretion in the trial court to grant or deny the name change. See In re Bicknell, Butler App. Nos. CA 2000-07-140 and CA2000-007-141, unreported, at 5. Provided the procedural notice requirements of the statute are met, the trial court must then determine whether there is "proof that *** the facts set forth in the application show reasonable and proper cause for changing the name of the applicant." In re Willhite (1999), 85 Ohio St.3d 28, 30; R.C. 2717.01(A). The trial court should review all facts and circumstances surrounding the name change, including the reasons expressed by the petitioner for the change and the name to be approved. In re Name Change of Handley (P.C. 2000), 107 Ohio Misc.2d 24, 26, citing Application of Sakaris (N.Y.Civ.Ct. 1993), 610 N.Y.S.2d 1007, 1011.
A trial court's decision regarding a name change application will be reversed only upon a demonstration that the trial court abused its discretion. In re Hall (1999), 135 Ohio App.3d 1, 3. More than an error in law or judgment, an abuse of discretion implies that the court's decision is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. When reviewing a decision under the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621.
In his first assignment of error, appellant contends that the trial court applied an incorrect legal standard, averring that R.C. 2717.01
allows a male transsexual applicant to adopt a female- identified name in an unopposed application for a name change absent any fraudulent intent. Appellant contends that his request is reasonable, because he is following a recommended course of psychiatric treatment, and proper, because there is no fraudulent purpose behind his request. Concluding that the statutory requirements for a name change have been met, appellant argues that the trial court erred by denying his application.
In his second assignment of error, appellant contends that the public confusion resulting from the grant of his requested name change would be less than that resulting from a denial of his request. Appellant contends that the trial court abused its discretion by finding that granting the name change would lead to "confusing or misleading the public in its dealing with the applicant."
Appellant's argument that the only ground for denial of a name change petition occurs when the name change is requested for a fraudulent or misleading purpose has been explicitly rejected by this court. SeeBicknell at 5. This court has stated that the reasonable and proper standard of R.C. 2701.01 requires judicial scrutiny of whether the requested name change is consistent with public policy. See id. at 6.
The trial court's decision sets forth succinctly the appropriate standard of review under R.C. 2717.01, and applies that standard to the facts of the present case. Our review of the trial court's decision reveals that the trial court properly considered gender dysphoria as a gender identity disorder. The trial court found that, unlike other physical intersex conditions, appellant's condition is a mental disorder. The trial court noted that sex reassignment surgery may be requested by persons who experience short-term desires or beliefs which may change with the passage of time. The trial court's denial of appellant's name change application is partially premised on its belief that appellant's decision to change his name was made without regard to the possibility that he would change his mind once going through the real life experience.
As well, appellant framed the reason for the name change as "sex reassignment surgery" on his petition. The evidence presented shows that he was not scheduled for such surgery, and there was no evidence that the surgery would take place in the immediate future. Appellant failed to prove the facts set forth in his name change petition. Reviewing the trial court's decision in its entirety, we do not find that the trial court acted in an unreasonable, arbitrary or unconscionable manner. The first and second assignments of error are overruled.
In his final assignment of error, appellant contends that the trial court violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. Appellant submits that the denial of his name change request was impermissibly based on his gender alone.
The Equal Protection Clause prevents a state from treating people differently under its laws on an arbitrary basis. State v. Williams
(2000), 88 Ohio St.3d 513, 530. The Equal Protection Clause requires that all people similarly situated be treated alike. City of Cleburne,Tex. v. Cleburne Living Center (1985), 473 U.S. 432, 439,105 S.Ct. 3259, 3254. Unless a suspect class or fundamental right is involved, the action need only bear a rational relationship to a legitimate state interest. Williams at 530. However, where laws or government practices differentiate based on gender, the state must show "at least that the classification serves important governmental objectives and that the discriminatory means employed are substantially related to those objectives." United States v. Virginia (1996), 518 U.S. 515, 531,116 S.Ct. 2264, 2275.
In the present case, the record indicates that the statute was neutrally applied. See State ex rel. Doersam v. Indus. Comm. (1989),45 Ohio St.3d 115, 119-120. The trial court's denial of appellant's name change request was premised on its belief that appellant's request may have been made without thorough consideration of the consequences, as well as a finding that appellant had not undergone, and had not scheduled, gender reassignment surgery.
As discussed in the resolution of the first two assignments of error, there is evidence in the record to support the trial court's decision that the name change request was not proper and reasonable. Appellant has not presented any evidence that gender bias affected the trial court's decision. Accordingly, appellant's third assignment of error is overruled.
Judgment affirmed.
POWELL, J., concurs.
VALEN, P.J., dissents.
[1] Gender-identity disorder refers to a biological male or female who believes that he or she was born the wrong gender. See Diagnostic and Statistical Manual of Mental Disorders (4 Ed. 1994) 523-538. Gender dysphoria is "[a] persistent aversion toward some or all of those physical characteristics or social roles that connotes one's own biological sex." Id. at 767. Transsexualism is severe gender dysphoria "coupled with a persistent desire for the physical characteristics and social roles that connote the opposite biological sex." Id. at 771.
[2] This court granted leave to The American Family Association of Ohio, who filed an amicus curiae brief in support of the trial court's decision.