OPINION OF THE COURT
Charles D. Wood, J.
Petitioner, David Bruce Furick, is a state inmate, currently serving his sentence for his second conviction of attempted rob *170 bery in the first degree (Penal Law § 160.15) at the Clinton Correctional Facility in Dannemora, New York. He has made an application pursuant to CPLR 1101, for poor person status in the above-captioned petition for a name change (pursuant to Civil Rights Law art 6).[1] In support of his application, the petitioner claims that he is “unable to pay the costs, fees, and expenses necessary to prosecute this proceeding.”[2]
Initially, it is important to note that “anybody may change their names without asking the approval of the court at any time and, provided fraud was not the inspiration for the act, the new name will be as effectively assumed and recognized as if its use had been provided for by a court order” (Matter of Eisenberg v Strasser, 1 Misc 3d 299, 302-303 [Sup Ct, Kings County 2003], quoting Matter of Lipschutz, 178 Misc 113, 113-114 [Sup Ct, Queens County 1941]). The common-law right to change one’s name is not merely a theoretical option, it is a real and recognized one. The judicially ordered name change process found in Civil Rights Law § 60 et seq. neither adds nor detracts from a person’s existing common-law right to change his or her name (Matter of Conde, 186 Misc 2d 785 [Civ Ct, Kings County 2000], citing Matter of Ellerby, 99 Misc 2d 691 [Civ Ct, Kings County 1979]; Matter of Sakaris, 160 Misc 2d 657 [Civ Ct, Richmond County 1993], citing Smith v United States Cas. Co., 197 NY 420 [1910]). Adult name change applications are generally not matters of great controversy, and are routinely granted, absent fraud, deceit or avoidance of an obligation (see Matter of Conde, 186 Misc 2d 785 [2000], supra; Matter of Halligan, 46 AD2d 170 [4th Dept 1974]).
Notably, however, petitions for name change from convicted felons while they serve their sentences of incarceration have drawn more scrutiny from courts. When the New York State Department of Correctional Services (now the Department of *171 Corrections and Community Supervision) and/or the prosecuting District Attorney’s office object to a prisoner’s name change petition on the basis that, if granted, the name change would create record-keeping problems for corrections and law enforcement officials, as well as potentially endangering crime victims, and the general public, courts frequently defer to the expertise of such law enforcement officials (Matter of Holman, 217 AD2d 1012 [4th Dept 1995]; Matter of Rouson, 119 Misc 2d 1069 [Scoharie County Ct 1983]; Matter of Washington, 216 AD2d 781 [3d Dept 1995]).[3] However, even in the absence of any objection, courts must “analyze and scrutinize the petition, since the order of the court changing a person[’s] name gives the new name an ‘aura of propriety and official sanction’ and makes it a public record.” (Matter of Bobrowich, 2003 NY Slip Op 50025[U] [Civ Ct, Richmond County 2003], citing Matter of Linda Ann A., 126 Misc 2d 43 [Civ Ct, Queens County 1984]; see also Matter of Rivera, 165 Misc 2d 307 [Civ Ct, Bronx County 1995].)
Here, before the merits of the proposed name change can be reached, the court must determine whether to grant the poor person status that the petitioner seeks to prosecute his petition. The court notes that the line of decisions emanating from Boddie v Connecticut (401 US 371 [1971]) makes clear that procedural due process dictates that certain fundamental rights, such as the right to marriage and to terminate a marriage through divorce, cannot be denied to indigent individuals, whether or not they are in prison.
In Boddie and its progeny (see Ortwein v Schwab, 410 US 656 [1973]; United States v Kras, 409 US 434 [1973]), the Supreme Court held that access to the courts is not an absolute constitutional right. A person’s access to the courts is constitutionally protected only where the right sought to be asserted through the court is entitled to special protection, and then, only where no other forum exists in which the claimant can vindicate that constitutionally protected right. In Boddie, the Court found that in the case of marriage (specifically, termination thereof by divorce), access to the courts was “the exclusive precondition to the adjustment of a fundamental human relationship” (401 US at 383). The Court held that a state may not “pre-empt the *172 right to dissolve this legal relationship without affording all citizens access to the means it has prescribed for doing so” (id.).
However, when a fundamental right is not implicated, the Supreme Court has held that access to the courts for the resolution of other claims may be denied if there is a rational basis for it (Ortwein v Schwab, 410 US 656 [1973], supra [$25 filing fee impaired ability of petitioners to obtain appellate review of agency determination reducing welfare benefits]; United States v Kras, 409 US 434 [1973], supra [filing fee required to petition court for discharge in bankruptcy]). The Court in Kras specifically distinguished the rights sought to be exercised in Kras from those in Boddie. More particularly, the Supreme Court stated,
“If Kras is not discharged in bankruptcy, his position will not be materially altered in any constitutional sense. Gaining or not gaining a discharge will effect no change with respect to basic necessities. We see no fundamental interest that is gained or lost depending on the availability of a discharge in bankruptcy.” (Kras at 445.)
Substituting “name change” for “discharge,” the fact pattern and holding in Kras more closely resembles the instant scenario than the facts and ruling in Boddie. A judicial name change is significantly less basic or urgent to an indigent person than a discharge in bankruptcy. Looking to New York’s highest court, Chief Judge Breitel observed:
“among the many kinds of private litigation which may drastically affect indigent litigants, matrimonial litigation is but one. Eviction from homes, revocation of licenses affecting one’s livelihood, mortgage foreclosures, repossession of important assets purchased on credit, and any litigation which may result in the garnishment of income may be significant and ruinous for an otherwise indigent litigant” (Matter of Smiley, 36 NY2d 433, 440-441 [1975]).
Notably absent from the High Court’s list is a petition for judicial name change.
This rationale is consistent with the holding in Matter of Ellerby (99 Misc 2d 691 [1979]), which dealt solely with whether a judicial name change application entitled a petitioner to poor person relief. The court sees no rational basis to have the cost of the petitioner’s personal preference for a name be something that is borne by anyone but him. Simply stated, the taxpayers of the State of New York are not required to pay for an individual’s judicial name change.
*173 Since the petitioner is not entitled to a waiver of the filing fees, the court’s instant decision does not rule on the merits of the underlying desired name change by the petitioner. In the event that the petitioner pays the applicable filing fees within the time allotted herein, the court will review the merits of the proposed name change.
Accordingly, it is hereby ordered that this application is denied, and, as required by section 1101 of the CPLR, all applicable filing fees in the proceeding must be paid within 120 days of the date of this order, or else the proceeding shall be deemed dismissed without further order of the court.

. The following papers were considered in connection with the application: petition for name change, with exhibits thereto; poor person affidavit of David Bruce Furick, sworn to December 23, 2010; I CAS system printout, dated January 18, 2011. Pursuant to CPLR 1101 (f), the court has reviewed the petitioner’s submissions, together with the petitioner’s trust fund account statement with the New York State Department of Corrections. Over the six months preceding the statement, the petitioner has had deposits in the amount of $157.22, $76.18, $119.30, $93.05, $101.05, and $222.80. Although not specifically required by CPLR 1101 to consider the nature of the underlying petition in making its determination, the court has done so, and deems the same to be essential in assessing the petitioner’s instant application for poor person status.

. Affidavit of David Bruce Furick, sworn to December 23, 2010.

. The court presumes that in our post-September 11 era, the Department of Homeland Security and other federal agencies may also have security concerns that may have validity, but to the court’s knowledge, no precedent exists where federal authorities have sought to prevent a judicial name change by a prisoner in state court.