ANNE STRYZINSKI, Appellant, *v.* HAROLD C. ARNOLD, Respondent.

Third Department, May 11, 1955.

*Anthony B. Cieri* for appellant.

*Charles B. Swartwood* for respondent.

BERGAN, J. P. This case turns on the instruction given to the jury on the intersection right of way rule. Plaintiff Anne Stryzinski was driving her Buick car in a southerly direction in North Main Street, Elmira, on August 22, 1952. The defendant Arnold's Chrysler car, driven by Marion Johnson, was proceeding easterly on West Center Street. At the intersection of the two streets there was a collision. As they approached

the intersection, therefore, the defendant's car was on the right of the plaintiff's car. The verdict of the jury was for the defendant.

There are some differences between the parties on the relative nearness of the two cars to the intersection as they approached it and on their respective rates of speed; but there can be little doubt, if the jury took the defendant's proof of the facts leading to the accident, which, in the light of their verdict, it may be assumed here that they did, they would be justified in applying against the plaintiff the right of way rule in full vigor.

This is a rule which in naked language, without attempt at statutory definition, simply gives to the vehicle on the right at an intersection "the right of way"; and imposes on "every driver" on the left the requirement that he shall "grant" such right to the other vehicle. (Vehicle and Traffic Law, § 82, subd. 4.)

Mrs. Stryzinski testified on direct examination that when she first saw defendant's car in West Center Street it was 100 feet away; that she entered the intersection at twenty miles an hour; that when she entered the intersection defendant's car was two car-lengths away, and that the collision occurred by the defendant's car striking the right side of her car when she was well across the center line of West Center Street. On cross-examination she said she did not see defendant's car again after her first view of it when it was 100 feet from the intersection.

The driver of the defendant's car, Mrs. Johnson, testified she observed plaintiff's car for the first time when it was 80 or 90 feet from the intersection and she was 30 or 38 feet from the intersection; that the Stryzinski car was going between forty and fifty miles an hour, and that she was going only twenty miles an hour. She applied her brakes but continuing into the intersection, "as I stopped I was almost through the intersection". The car she was driving was struck, she said, after she was stopped, on the left fender. All this presents a question of fact in a typical frame.

Although there was no exception taken by the plaintiff to the main charge, the requests made by the plaintiff for further instructions on the right of way rule cannot be reviewed in isolation, but must be examined with the instructions in the main charge kept in mind. For that reason it is helpful to read in text what the court said about the right of way rule. First he read to the jury exactly the language of the statute. Then he said: "The last section I have just read to you is known as the 'right of

way ' rule. As applied to this case, it means that as the two autos approached the intersection Mrs. Johnson, who was on the right of Mrs. Stryzinski, had the right of way, and that Mrs. Stryzinski did not have the right of way. However, the right of way rule is not inflexible or absolute. It should be applied with reason. The rule of mutual forbearance and reciprocal courtesy sums up the duty of both of these drivers as they approached this intersection. Both drivers should approach an intersection with automobiles under control. The driver on the left, in this case Mrs. Stryzinski, must be on the lookout for autos coming from her right, and must keep in mind that under ordinary circumstances an auto coming from her right would have the right of way; but it is also the duty of the driver on the right, in this case Mrs. Johnson, to proceed with such care and caution as the circumstances would indicate to the ordinary prudent driver."

At the end of the charge, after noting that he had no exceptions, plaintiff's counsel requested a charge " that a reasonable application of the right of way rule is that it would not be the duty of an automobile approaching an intersection to stay its progress because at some distance on his right he saw another car approaching." There followed this:

" The Court: I refuse to charge in that language, because here you have a condition as to how far away the other car was.

" Mr. Cieri: Will your Honor charge on that point?

" The Court: I think I have covered it in my charge. If you want to phrase some different charge, I will pass upon it.

" Mr. Cieri: I ask your Honor to further charge the jury, that, everything else being equal if the jury finds that the Arnold car was farther back from the intersection than the Stryzinski car, a reasonable application of the rule is that it was not the duty of Mrs. Stryzinski to stop in order to allow the Johnson car to go through.

" The Court: I refuse to charge in that language."

In a later argument by counsel for plaintiff addressed to the court on a motion to set aside the verdict he explained that in framing his requests he had adopted the language of HISCOCK, Ch. J., in *Shirley* v. *Larkin Co.* (239 N. Y. 94, 96). The first request was, indeed, a substantially accurate paraphrase of a portion of a sentence and gave a fragment of the rationale of decision developed in 1924 by the Chief Judge in that case; but taken out of context it distorts what the court decided and what the opinion said in support of what the court decided.

A judge instructing a jury is not required at the peril of being held in error to adopt and quote sentences taken from judicial opinions, written in the first place for the enlightenment of the profession, if he has adequately and in language otherwise easily understandable to the lay jury explained the rule. This must especially be so when the language sought to be imposed on the judge by the request to charge requires the setting of its full context to be seen in intelligible proportion.

The language under consideration here is a good illustration of the problem of words taken out of decisional context to frame a request which in turn would throw out of focus the instructions designed to guide the jury. The sentence in the opinion (p. 96) stated that the driver on the left was not required to " stay his passage " because " somewhere in the distance ", which has a somewhat different overtone of meaning than " at some distance " used in the first request, a vehicle was approaching on the right. The words " somewhere in the distance " have quite a different meaning from " farther back from the intersection " used in the second request.

But even if requested very accurately, just the way they were written, these words, dealing in an abstract situation illustrative for the profession, could not easily be useful to a jury. A jury would need to know, for example, what a court would mean by " somewhere in the distance "; and applied to the case now before us such a charge would suspend itself in a vacuum, since whatever else might be said about these cars as they approached the corner, neither the judge nor jury could regard the car approaching on the right as " somewhere in the distance ".

Furthermore, the sentence sought to be relied on began with the words " Of course " and the words of the sentence immediately preceding, if charged literally, would amount to a direction to the jury to find for the defendant: " We think, as a matter of law, that this shows a reckless disobedience by the injured person of the statute providing for the management of cars at a street intersection which defeats any recovery by him. Of course, this statute is to receive ". The language which has been quoted follows. In some respects that case and the one before us have points of similarity.

It is interesting to note the contextual language which follows the sentence under consideration: " Neither, on the other hand is the statute to be interpreted as meaning that the driver of a car limited by subordinate rights may go forward to the point of intersection because a hasty and unreliable computation seems to indicate that he is a few feet nearer the point of inter-

section than the car on his right and that, therefore, he possibly may be able to dash across the line of the latter and escape a collision."

While the bluntness of the final words of the Chief Judge in that opinion: "This plaintiff invited his own disaster and he is entitled to no relief from the courts" has been ameliorated somewhat in later cases, especially in two in which Judge CRANE wrote for the court, *Shuman* v. *Hall* (246 N. Y. 51 [1927]) and *Anderson* v. *Burkhardt* (275 N. Y. 281 [1937]), the rule which a jury must follow in deciding a right of way case remains as the Judge charged in the case before us.

The rule, as he charged, is not "inflexible or absolute"; it is to be applied "with reason". "Forebearance and reciprocal courtesy" was the duty of "both drivers". The driver on the left must keep in mind "that under ordinary circumstances" the car on the right would have the right of way; the car on the right, in turn, must proceed "with such care and caution as the circumstances would indicate to the ordinary prudent driver".

There are, no doubt, different ways of saying all this; and it has been said adequately in other language by other judges in instructing juries. But this instruction reflects fully both the spirit of the rule and the point of approach by a jury in applying the rule to the facts of an actual collision. The language of a charge should be alive, fresh and instructive to the lay minds which compose the jury. The unimplemented language of the statute "shall grant the right of way" has some inherent difficulties of its own, both to juries attempting to apply it to actual intersection events and to judges attempting to instruct them how to apply it.

It cannot be applied mechanically or automatically by saying that the car on the right always takes precedence from the moment the vehicles are equidistant from each other; because that moment always arrives sometime in every case and can be conclusively demonstrated by the fact the collision occurs.

So resort must be had to the point when they have become equidistant, and to applying the test of reasonable care with that point kept in mind. Due consideration must then be given by the jury to the factor that the vehicle on the left should yield if, to a reasonable driver, alert and careful, the vehicles would appear to be converging to a common point of time and place. Of course, this, too, is not quite a satisfactory definition; or one always safe to give to a jury, but it illustrates well enough the difficulty which in the end must be resolved in the ultimate solvent of negligence, the test of reasonable care. This is the spirit of the

opinion by Judge Cardozo in *Ward* v. *Clark* (232 N. Y. 195 [1921]) which preceded *Shirley* v. *Larkin Co.* The care, as Chief Judge Crane noted in *Anderson* v. *Burkhardt* (*supra,* p. 282) must be '' commensurate with the situation ''.

The judgment should be affirmed, with costs.

Coon, Halpern and Imrie, JJ., concur.

Judgment affirmed, with costs.