OPINION OF THE COURT
 

 Wesley, J.
 

 Defendant John O’Hara, an attorney and frequent candidate for elective office, was convicted of seven crimes arising from his fraudulent filing of a false voter registration form and voting in five separate elections in an election district in which he did not reside. On appeal, defendant contends that the definition of voting residence contained in the Election Law is at
 
 *381
 
 odds with our recognition that in today’s society, a person can have more than one residence. This case, however, turned on whether a second residence actually existed, not a choice between two. The court’s charge correctly reflects the state of New York law and did not, as defendant now contends, direct a verdict against him.
 

 Defendant has lived in a multi-unit apartment building at 579 61st Street in Brooklyn since the 1980s. Until 1992, he registered to vote using the 61st Street address, which was within the 20th Election District and part of the 51st State Assembly District and the 38th Council District of the City of New York. Following redistricting in 1991-1992, 579 61st Street was no longer situated within these districts.
 

 On November 2, 1992, defendant prepared, signed and filed a new voter registration form specifying that he resided at 553 47th Street. This address was located within the newly redrawn borders of the 20th Election District, the 51st State Assembly District and the 38th Council District of the City of New York. Using the 47th Street address, defendant voted in those districts on five occasions — November 3, 1992; May 4, 1993; September 14, 1993; September 28, 1993 and November 2, 1993.
 

 Defendant was charged with one count of offering a false instrument for filing in the first degree (Penal Law § 175.35), one count of false registration (Election Law § 17-104 [4]) and five counts of illegal voting (Election Law § 17-132 [3]). Defendant was tried and convicted on all counts of the indictment in 1997. On appeal, the Appellate Division reversed the judgment and ordered a new trial due to an improper missing witness charge, and rejected defendant’s remaining contentions as unpreserved or without merit (253 AD2d 560). The second trial ended in a deadlocked jury.
 

 During opening statements of the third trial, defense counsel argued that the only basis for the People’s charges rested on the assertion that defendant never lived at 553 47th Street. According to defense counsel, the evidence would establish that, contrary to the People’s position, defendant had in fact taken up residence at 553 47th Street. Defense counsel submitted that ultimately the case would turn on the credibility of the witnesses.
 

 At trial, the People called several witnesses. An employee for the phone company testified that defendant maintained a phone at the 61st Street address. There was, however, no rec
 
 *382
 
 ord of any telephone service at the 47th Street address. In addition, the owner of 579 61st Street testified that defendant was a tenant at that address from 1990 to 1993.
 

 Raphael Munoz and Roberto Lozano testified that they, along with another individual, moved into 553 47th Street in 1992, with the intent of purchasing the building from Magaly Lucas, the owner, which they eventually did. According to Munoz and Lozano, when the three men first moved in, nobody else was living in the building, the apartment was in shambles and the basement was uninhabitable. Each man testified that some time after moving in, defendant approached them, told them that he was receiving mail at that address and asked them to hold it for him.
 

 Defendant presented the testimony of an employee of the Office of Court Administration who stated that in 1993 defendant’s attorney registration form listed 553 47th Street as his home address. Defendant further proffered the testimony of an American Express employee that defendant’s billing statements listed the 47th Street address. Several neighbors who had participated in defendant’s political campaigns testified that they had on occasion observed him walking into the 47th Street house and that they had understood that he lived there with his former girlfriend, Lucas. One neighbor testified that Josephine and Raymond Vales — the owners of the house prior to Lucas — had at some time renovated the basement into a complete apartment. Defendant’s mother and aunt also testified that defendant resided at the 47th Street address.
 

 Finally, defendant testified that he moved into the 47th Street address because his ex-girlfriend, Lucas, owned the house. He stated that he kept the 61st Street address for his relatives and used it as an office. When he and Lucas separated, she moved to Manhattan and allowed him to stay in the basement apartment at 47th Street free of charge. Defendant further testified that he never changed his driver’s license to the 47th Street address and that he used the 61st Street address for all State and Federal tax forms.
 

 On redirect, the People called Josephine Vales, who testified that when she and her husband owned the 47th Street building they never renovated the basement into a habitable apartment.
 

 During the charge conference, the trial court indicated that it would define residency to the jury as follows:
 

 “According to the law a residence is that place
 
 *383
 
 where a person maintains a fixed, permanent and principal home and to which he wherever temporarily located always intends to return.
 

 “Additionally, a candidate who has two residences may choose one to which he has the legitimate, significant and continuing attachment as his residence for purpose of the [E]lection [L]aw. It is for the candidate to decide which address is to be his voting and campaign address.
 

 “However, the address chosen by the defendant as his residence must comport with the definition of residence as I have previously given it to you.”
 

 Defense counsel objected to the charge, indicating that he agreed with the court’s use of the definition of “residence” found in Election Law § 1-104 (22). and that a candidate can choose between multiple residencies. As defense counsel noted, “I don’t have a problem with that definition of residency [the charge language involving multiple residencies] being attached to the first definition of residency [the charge language taken directly from Election Law § 1-104 (22)].” Defense counsel limited his objection “strictly to the fact that after these two portions of residency are read, the Court refers the jurors back to Election Law Section 1-104 sub 22.” According to counsel, “I think that might be somewhat confusing.”
 

 Defense counsel further objected to use of the Election Law’s definition of residence in reference to the first count of the indictment, which charged defendant with filing a false instrument. Counsel asserted that the only definition which should be used in that regard was that a candidate who has two residences may choose one to which he has a legitimate, significant and continuing attachment. The court did not change its charge.
 

 The jury convicted defendant on all counts of the indictment. The Appellate Division affirmed.
 

 Defendant now argues that the Election Law definition of “residence” cannot be applied literally in a case of dual residency and that a literal application of Election Law § 1-104 (22) is unconstitutional. Defendant further maintains that the indictment should be dismissed because the Election Law definition of “residence” is vague. However, during the jury charge conference, defendant did not object to the specific language of the charge, nor did he raise any of the constitutional issues he now asserts. Thus, those issues are unpreserved
 
 (see, People v
 
 
 *384
 

 Cadorette,
 
 56 NY2d 1007, 1009;
 
 People v Whalen,
 
 59 NY2d 273, 279-280).
 

 Defendant did, however, object to the trial court’s second reference to the Election Law definition of “residence” on the ground that it “might be somewhat confusing” for the jury. According to defendant, under the court’s charge, his failure to relinquish the 61st Street apartment compromised his assertion that the 47th Street apartment also was his residence for purposes of registration and voting, and therefore, in essence dictated a guilty verdict. We disagree.
 

 In this case, all the counts of the indictment stem from defendant’s affirmation in his voter registration form that 553 47th Street was his place of residence pursuant to the Election Law during 1992-1993 for voting purposes. A person commits the offense of “false registration” under the Election Law when he or she “[k]nowingly gives a false residence within the election district when registering as an elector” (Election Law § 17-104 [4]). “Illegal voting” is committed when a person “[v]otes or offers or attempts to vote at an election * * * in an election district or from a place where he does not reside” (Election Law § 17-132 [3]). Finally, a person violates Penal Law § 175.35 “when, knowing that a written instrument contains a false statement or false information, and with intent to defraud the state * * * he offers or presents it to a public office * * * with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records” of that public office.
 

 The Election Law defines residence as “that place where a person maintains a fixed, permanent and principal home and to which he, wherever temporarily located, always intends to return” (Election Law § 1-104 [22]). Thus, to be a resident of a place, a person must be physically present with the intent to remain for a time
 
 (see, Matter of Palla v Suffolk County Bd. of Elections,
 
 31 NY2d 36, 47;
 
 see also, Williams v Salerno,
 
 792 F2d 323, 327 [2d Cir]). The definition of “residence” comes from traditional notions of domicile
 
 (Matter of Palla, supra,
 
 31 NY2d, at 47;
 
 see also, Matter of Hosley v Curry,
 
 85 NY2d 447, 451,
 
 rearg denied 85
 
 NY2d 1033). The determination of an individual’s residence is dependent upon an individual’s expressed intent and conduct
 
 (Matter of Palla, supra,
 
 31 NY2d, at 47).
 

 New York courts have recognized that in this modern and mobile society, an individual can maintain more than one bona fide residence
 
 (see, e.g., Matter of Gallagher v Dinkins,
 
 41 AD2d
 
 *385
 
 946,
 
 affd
 
 32 NY2d 839;
 
 Matter of Gladwin v Power,
 
 21 AD2d 665,
 
 affd
 
 14 NY2d 771;
 
 Matter of Chance v Power,
 
 14 AD2d 595,
 
 affd
 
 10 NY2d 792). However, for the purposes of the Election Law, one cannot create an address solely for the purpose of circumventing residency requirements
 
 (Matter of Mosley v Curry,
 
 207 AD2d 116, 118,
 
 revd on other grounds
 
 85 NY2d 447, supra;
 
 see also, Matter of Lemishow v Black,
 
 104 AD2d 460,
 
 affd
 
 63 NY2d 684, 685).
 

 The crucial determination whether a particular residence complies with the requirements of the Election Law is that the individual must manifest an intent, coupled with physical presence “without any aura of sham”
 
 (Matter of Gallagher, supra,
 
 41 AD2d at 947). As this Court has stated, an individual having two residences may choose one to which she has “legitimate, significant and continuing attachments as her residence for purposes of the Election Law”
 
 (Matter of Ferguson v McNab,
 
 60 NY2d 598, 600). Generally, where there is no reason to assume that a residence has been asserted merely for the purposes of voting, where no fraud or deception has been practiced and where there is a history of the residence employed, the courts have upheld a fact-finder’s determination of residency
 
 (Matter of Gallagher, supra,
 
 41 AD2d at 947;
 
 see also, Matter of Ferguson,
 
 96 AD2d 916,
 
 affd
 
 60 NY2d 598,
 
 supra; Matter of Gladwin, supra; Matter of Chance, supra).
 

 Here, the jury was not asked, as defendant claims, to determine whether as between two residences defendant picked the more appropriate one. The sole issue here was whether defendant genuinely took up residence at 553 47th Street for voting purposes. In considering whether 553 47th Street was a bona fide residence from which defendant could vote, the jury needed to be informed of the Election Law’s definition of residence. The jury was not instructed to convict defendant if it found that he actually maintained two residences. The charge, when read as a whole, was not confusing as a matter of law. It instructed the jury on how to determine whether 553 47th Street could be considered defendant’s residence for voting purposes, and it informed the jury that if the proof established that defendant had two residences he could pick one as long as the “residence” he picked (553 47th Street) was indeed a residence of his, and not a sham. The jury applied that instruction to the facts it found, and convicted defendant on all counts of the indictment.
 

 We respond to the dissent with three points. First, the arguments it addresses overwhelmingly are unpreserved; they were
 
 *386
 
 not made before the Trial Judge. Second, we cannot agree with the dissent’s foundation premise that the Election Law and case law definitions of residence cannot stand side-by-side (an argument plainly not made to the Trial Judge). Finally, the dissent points out that defendant’s own testimony, “if credited,” would have been sufficient to establish residency under our own Election Law cases (dissenting opn, at 389). The jury, however, also heard — and by its verdict credited — testimony from the phone company employee that defendant had telephone service at 61st Street but not 47th Street; the 61st Street landlord that defendant was a tenant there; and the owners of the 47th Street premises that the basement where defendant says he resided was uninhabitable.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Rosenblatt, J. (dissenting). Defendant was arrested after he registered to vote and voted in five elections using an apartment on 47th Street in Brooklyn as his legal voting residence. He was indicted on one count of false registration under Election Law § 17-104 (4), five counts of illegal voting under Election Law § 17-132 (3) and one count of offering a false instrument for filing under Penal Law § 175.35. Convictions for such felonies are punishable by up to four years in prison (Penal Law § 55.10 [1] [b]). "Because defendant acknowledged that he had listed the 47th Street apartment as his residence, the only fact issue at trial was whether that apartment was his “residence” within the meaning of the Election Law.
 

 What qualifies as a voter’s “residence” in New York, however, is far from crystal clear. Election Law § 1-104 (22) defines “residence” as “that place where a person maintains a
 
 fixed, permanent and principal
 
 home and to which he, wherever temporarily located, always intends to return” (emphasis added). Under the statutory definition, residence is the equivalent of domicile
 
 (see, Matter of Palla v Suffolk County Bd. of Elections,
 
 31 NY2d 36, 47). Over the last several decades, however, this Court has not adhered to the strict, literal meaning of this statutory definition.
 

 In
 
 Matter of Gladwin v Power
 
 (21 AD2d 665), a candidate for assembly had a family home outside her assembly district. She also rented space within the district, which she used as an office and “for occasional living.” A rival primary candidate brought an action to invalidate her designating petition. The Appellate Division held that “[t]he evidence establishes
 
 *387
 
 satisfactorily the current intention and the persisting intention over a number of years of [the candidate] to maintain a legal residence” in the district
 
 (Gladwin v Power, supra,
 
 at 665). We affirmed without opinion (14 NY2d 771).
 

 Similarly, in
 
 Matter of Bressler v Holt-Harris
 
 (37 AD2d 898), a voter lived in a house with his family outside the City of Albany. At the same time, to remain eligible to run for citywide elected office, he kept a studio apartment in the City, for which his law firm paid the rent. He kept a few personal items in the apartment and had eaten and slept there
 
 once
 
 in seven years. He also had his political mail sent there. A rival candidate brought an application to strike the voter from the City’s registry. Applying an identically worded Election Law statute, the Appellate Division concluded that the voter had established residence by showing a “continuity of conduct * * * for many years evincing an intention to be and remain a resident of the City * * * as well as a continuous voting record from said address for several years last past”
 
 (Bressler v Holt-Harris, supra,
 
 at 898). This Court affirmed on the Appellate Division’s opinion (30 NY2d 529).
 

 In both cases, as in numerous others, the alleged “residence” located inside the voting district was by no means “a fixed, permanent and principal home” to which the candidate “always intend[ed] to return.” As New York appellate courts have repeatedly refused to invalidate candidacies based on failures to comply strictly with statutory residency requirements, an alternative, judicially created test for residence has crept into the jurisprudence. Candidates may now have two “residences,” providing that they “choose one to which [they] ha[ve]
 
 legitimate, significant and continuing
 
 attachments”
 
 (Matter of Ferguson v McNab,
 
 60 NY2d 598, 600 [emphasis added] [citing
 
 Matter of Gallagher v Dinkins,
 
 41 AD2d 946,
 
 affd without opinion
 
 32 NY2d 839];
 
 see also, Matter of Isabella v Hotaling,
 
 207 AD2d 648;
 
 Matter of Getter v Lasher,
 
 196 AD2d 613;
 
 Matter of Umland v Board of Elections,
 
 143 AD2d 240).
 

 The narrower statutory definition of residence cannot logically be read compatibly with the dual residency authorized by
 
 Ferguson.
 
 A voter cannot have two “fixed, permanent and principal home[s].” “Principal” is defined as “first, highest, or foremost in importance, rank, worth, or degree, chief’
 
 (see,
 
 American Heritage College Dictionary, at 1088 [3d ed]). It is not possible to have two living quarters both of which are “first, highest or foremost in importance.”
 

 
 *388
 
 In Election Law cases involving more than one residence, courts have endeavored to reconcile this incompatibility by deeming the narrow statutory definition of residence satisfied when a candidate has “legitimate, significant and continuing” attachments to the particular residence chosen for Election Law purposes
 
 (see, Ferguson v McNab, supra).
 
 Thus, a residence chosen by the voter and satisfying the
 
 Ferguson
 
 standard essentially has been held to constitute that candidate’s “fixed, permanent and principal” residence even though such a residence objectively might not satisfy the narrow statutory definition.
 

 The charge in this case did not instruct the jury that a residence satisfying the
 
 Ferguson
 
 standard is deemed to be a “fixed, permanent and principal” residence for purposes of the Election Law. The judge instructed the jury that it must determine whether defendant’s 47th Street apartment satisfied the statutory definition of residence, then noted that a candidate could have two residences under the
 
 Ferguson v McNab
 
 formulation, and finally reiterated that the defendant’s residence “must comport with” the statutory definition. Defense counsel objected, claiming that the charge as a whole was confusing.
 
 [1]
 
 It was.
 

 A jury, upon hearing the entire charge, must be able to “gather from its language the correct rules which should be applied in arriving at decision”
 
 (People v Ladd,
 
 89 NY2d 893, 895 [quoting
 
 People v Russell,
 
 266 NY 147, 153]). A party is entitled to “an unambiguous instruction of the pertinent law”
 
 (see, Schafer v Norwood Equip. Corp.,
 
 277 App Div 933, 934). It is not sufficient to excerpt portions of statutes or holdings in the abstract without adequately explaining them in a manner understandable to a lay person
 
 (see, Stryzinski v Arnold,
 
 285 App Div 780, 782-783).
 

 
 *389
 
 Here, the court’s instruction on the issue of defendant’s residence — two terse paragraphs — was the crucial charge which would definitively guide the jury in determining guilt or innocence. It was confusing in two ways. First, the jury could have understood the charge as requiring defendant to meet
 
 both
 
 the statutory definition
 
 and
 
 the
 
 Ferguson
 
 dual-residence qualification. As we have demonstrated, however, the literal Election Law definition and the
 
 Ferguson
 
 standard cannot stand side-by-side. The charge failed to synthesize the statutory definition with the
 
 Ferguson
 
 formulation. It charged both without any further explanation. In essence, the court asked the 12 jurors to do the impossible: integrate and comprehend two facially incompatible formulations of residence. This should not be countenanced in a felony prosecution. We cannot fathom the rule that would apply in this case if a voter’s chosen residence had to qualify under both
 
 Ferguson
 
 and the literal statutory definition. Nor could a jury.
 

 Moreover, the instruction also could readily have been interpreted as subordinating the
 
 Ferguson
 
 dual-residence standard to the stringent statutory residence test. Viewed in that light, the jury was told, in effect, that it could acquit defendant only if the 47th Street apartment was in fact his “principal” residence — i.e., the home that was “first, highest and foremost in importance.” This was a clear departure from the dual-residence jurisprudence of civil Election Law cases involving the same statutory definition.
 

 Defendant testified that he moved to the 47th Street apartment in 1993 with the “intent to set up residency” there. He further testified that he moved his clothes and lamps to that apartment, where he initially stayed overnight “all the time” until construction work on the building began, after which he “stayed there a lot.” This testimony, if credited, certainly would have been sufficient to establish residency under the
 
 Ferguson
 
 formulation as applied in our civil Election Law jurisprudence. Indeed, these facts are far stronger than those in
 
 Bressler v Holt-Harris,
 
 where the voter’s one-room apartment was held to satisfy the Election Law definition of residence even though the voter regularly lived with his wife in a two-story house outside the City and could remember eating and sleeping at the apartment only once in seven years. Clearly, under the court’s charge, the jury, in this criminal prosecution, could have returned a guilty verdict on facts indistinguishable from
 
 *390
 
 those held sufficient to establish a legal residence in
 
 Bressler
 
 — a civil case.
 
 [2]
 

 Historically, the “residence” issue has been addressed in the context of civil election appeals. In those cases, members of the Board of Election and appellate judges have determined on a case-by-case basis whether the connection between a particular voter and the asserted voting residence is sufficient. Central to each determination is a full understanding of relevant authority, which allows a comparison between the facts of the case at bar to the facts of cases that have already been decided.
 

 This, however, was a criminal prosecution, and a unique one at that. So far as we can discern, defendant is the only person ever brought to trial in New York on a charge of this kind.
 
 [3]
 
 If politically charged disputes such as this and questions of “residence” are going to be resolved in the criminal arena and decided by juries, with the possibility of criminal conviction and incarceration, we should ensure that the definition of residence is plainly fixed and easily understood.
 

 Accordingly, we would reverse the conviction and order a new trial.
 

 Chief Judge Kaye and Judges Smith, Ciparick and Graffeo concur with Judge Wesley; Judge Rosenblatt dissents and votes to reverse in a separate opinion in which Judge Levine concurs.
 

 Order affirmed.
 

 [1]
 

 . The majority correctly points out that defense counsel “ha[d] no problem” with the court charging just the statutory definition and then the
 
 Ferguson
 
 formulation. It was, however, the court’s reiteration of the statutory definition that rendered the charge as a whole “confusing.” The majority holds that defense counsel, by withholding his objection until after the reiteration of the statutory standard, somehow is foreclosed from arguing that asking the jury to apply both formulations simultaneously was confusing as a matter of law. We disagree. Counsel obviously viewed the
 
 Ferguson
 
 standard as
 
 modifying
 
 the statutory definition and therefore had no objection to the charge until the court erroneously engrafted the statutory definition back onto the
 
 Ferguson
 
 formulation. Counsel’s objection at that point unambiguously alerted the trial court to his assertion that, objectively, the statutory definition and
 
 Ferguson
 
 formulation cannot abide one another and thus could not be charged conjunctively.
 

 [2]
 

 . We cannot agree that the jury must have credited the testimony that contradicted defendant’s position that he resided at the 47th Street apartment. It is impossible to tell what testimony the jury actually credited because the erroneous charge would have allowed the jury to return a guilty verdict even if it fully credited defendant’s testimony.
 

 [3]
 

 . Defendant is one of two persons who have been criminally prosecuted for the failure to establish legál residence inside a voting district
 
 (see, People v Ramos,
 
 Sup Ct, Bronx County, Nov. 9, 1994, Bamberger, J., indictment No. 94-5993,
 
 affd
 
 223 AD2d 495). There, the defendant was prosecuted criminally for using his inlaws’ Bronx County apartment as his legal residence. The prosecutor instructed the Grand Jury on the issue of residence using only the statutory definition. The Supreme Court dismissed the indictment, holding that “it was not enough to simply read the Election Law definition of residence to the grand jury. Such an instruction did not convey the applicable law in a manner that fairly apprised the grand jury of the issue it had to decide” (slip opn, at 4). The Appellate Division affirmed.