This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------

No. 187
In the Matter of Steven Glickman,
          Respondent,
        v.
Zackary Laffin et al.,
          Appellants,
et al.,
          Respondents.
(Proceeding No. 1.)
(And Another Related Proceeding.)
--------------------------------
In the Matter of Zackary Laffin
et al.,
          Appellants,
        v.
Steven Glickman,
          Respondent,
et al.,
          Respondents.
(Proceeding No. 3.)


          John J. Ciampoli, for appellants.
          Kamran F. Hashmi, for respondent Glickman.


PER CURIAM:

          The primary issue presented by this appeal is whether

Steven Glickman, a candidate for the office of State Senator,

satisfies the State Constitution's five-year residency

requirement pertaining to candidates for legislative office.  We

conclude that Glickman's 2014 registration to vote in Washington,

- 1 -

D.C. precludes him, as a matter of law, from establishing continuous residency in New York within the meaning of the Constitution, and therefore reverse.

In these proceedings, Glickman seeks an order validating designating petitions naming him as a candidate for New York State Senator for the 55th Senate District in the Working Families and Democratic Parties in the September 13, 2016 Primary Election. Objectors -- Zackary Laffin, John D. Moffit, Jr. and Silvio Palermo -- seek to invalidate the same designating petitions. In particular, objectors maintained that Glickman failed to meet both the five-year New York State residency requirement and the one-year Senate District residency requirement for Senate candidates (see NY Const, art III, § 7).

Supreme Court held an evidentiary hearing, at which the parties presented evidence that Glickman had resided at his father's house in Tonawanda, New York prior to leaving for Maryland in 2007, where he attended college and graduate school. During the time period in question, he returned to his father's house multiple times each year. Glickman continued to use the Tonawanda address on his driver's license, kept personal belongings at his father's house and received bills at that address. He also stored his vehicle in the garage at his father's home. Glickman maintained his membership in his New York synagogue during this time, and kept his New York doctor and dentist.

In October 2013, Glickman moved to Washington, D.C., where he lived in a "community organizer's house."  He obtained employment on a yearly contract basis with a consulting firm and as a part-time high school teacher.  In November 2014, Glickman registered to vote in Washington, D.C.  Shortly thereafter, in March 2015, he moved back to his father's home in Tonawanda, where he registered to vote in May 2015.  Glickman moved to Milburn Street in Rochester, located within the 55th Senate District, in October 2015.  At the hearing, he produced two consecutive leases, as well as cable and utility bills, asserting that he lives at that location.

In October 2015, Glickman registered to vote at the Milburn Street address.  The following month, he filed a voter registration form stating that his residential address was Loderdale Road in Rochester.  The Loderdale Road address, which is apparently his father's girlfriend's home, is not within the 55th Senate District.  In January 2016, Glickman filed yet another voter registration form, changing his residential address back to Milburn Street.

Supreme Court granted the objectors' petition seeking an order invalidating the designating petitions, denied Glickman's petitions seeking an order validating the designating petitions and invalidated the petitions.  The court concluded that Glickman's 2014 registration to vote in Washington, D.C., and his attempt to cast a vote in that jurisdiction, prevented

him from meeting New York's five-year constitutional residency requirement as a matter of law. However, the court went on to hold that, in the event the Washington, D.C. voter registration was not conclusive on the issue of residency, objectors had failed to establish that Glickman lacked a bona fide New York residence for the mandatory five years.

Supreme Court also determined that objectors failed to establish that Glickman did not reside within the Senate District for the 12-month period preceding the election. The court credited Glickman's testimony that he did not intentionally change his voter registration to Loderdale Road. The court further observed that Glickman never attempted to vote at the Loderdale Road address and that he had changed his registration back to Milburn Street as soon as he discovered the error.

The Appellate Division reversed, on the law and the facts, and validated the petitions (__ AD3d __, 2016 NY Slip Op 05841 [3d Dept 2016]).[1] The court held that the mere act of registering to vote in another jurisdiction did not, as a matter of law, preclude Glickman from selecting New York as his electoral residence. The court concluded that, based on all of the facts and circumstances, Glickman had legitimate and

---

[1] The Appellate Division dismissed objectors' cross appeal for lack of aggrievement and reviewed their arguments in support of affirmance on the candidate's appeal to that court. Objectors do not challenge the dismissal of their cross appeal, but raise those arguments on their appeal to this Court from the Appellate Division order of reversal.

continuing attachments to this State and that the objectors failed to establish by clear and convincing evidence that Glickman did not meet the constitutional residency requirement. The court also addressed the one-year residency requirement and concluded that objectors had failed to establish that Glickman had resided outside of the Senate District at any point after October 2015.  The court deemed Glickman's testimony, that the change in registration had been inadvertent, credible.

Two Justices dissented and would have affirmed.  The dissent concluded that the act of registering to vote in Washington, D.C. demonstrated Glickman's choice to use that jurisdiction and severed any claim of continuous residency in New York for electoral purposes.  The dissent further observed that, even if the act of registration was insufficient on its own, there was clear and convincing evidence that Glickman did not satisfy the five-year residency requirement.

Objectors appeal and the appeal lies as of right pursuant to CPLR 5601 (a).

According to the State Constitution, "[n]o person shall serve as a member of the legislature unless he or she is a citizen of the United States and has been a resident of the state of New York for five years, and . . . of the assembly or senate district for the twelve months immediately preceding his or her election" (NY Const, art III, § 7).  One's "residence" is defined by the Election Law as "that place where a person maintains a

fixed, permanent and principal home and to which he [or she], wherever temporarily located, always intends to return" (Election Law § 1-104 [22]).

Residency is generally a factual question, dependent upon the particular circumstances presented (see Matter of Newcomb, 192 NY 238, 250 [1908]).  The party bringing the challenge has the burden of establishing the failure to meet the constitutional residency requirements by clear and convincing evidence (see Matter of Weiss v Teachout, 120 AD3d 701, 702 [2d Dept 2014]).

An individual can have more than one residence and, for Election Law purposes, "may choose one to which [he or] she has 'legitimate, significant and continuing attachments'" (People v O'Hara, 96 NY2d 378, 385 [2001], quoting Matter of Ferguson v McNab, 60 NY2d 598, 600 [1983]).  The "crucial determination" for electoral residency purposes "is that the individual must manifest an intent, coupled with physical presence 'without any aura of sham'" (O'Hara, 96 NY2d at 385, quoting Matter of Gallagher v Dinkins, 41 AD2d 946, 947 [2d Dept 1973], affd 32 NY2d 839 [1973]).  "Generally, where there is no reason to assume that a residence has been asserted merely for the purposes of voting, where no fraud or deception has been practiced and where there is a history of the residence employed, the courts have upheld a fact-finder's determination of residency" (O'Hara, 96 NY2d at 385).

We have previously held that, in order to satisfy the constitutional residency requirement, the candidate must reside in this State for the five years immediately prior to the election (see Matter of Bourges v LeBlanc, 98 NY2d 418, 420 [2002]).[2]  The issue in Bourges was whether the five years of New York residency had to be continuous.  We held that it did, observing that, according to the record of the 1938 Constitutional Convention, the intent behind the residency requirement was to "ensur[e] that legislative representatives have contemporaneous familiarity and involvement with the issues facing the state and the community they represent" (98 NY2d at 420).

In Matter of Thompson v Hayduk (45 AD2d 955 [2d Dept 1974], affd without opn 34 NY2d 980 [1974]), we upheld the invalidation of a designating petition based on the candidate's failure to meet the constitutional 12-month residency requirement.  The Appellate Division observed that the candidate established that he had registered to vote and had voted in Bronx County.  The Court then concluded that the candidate "may not now be heard to claim that he was actually a resident of Westchester County[, where he sought election,] during that period" (45 AD2d at 956).

---

[2] As noted by Supreme Court, the parties have stipulated that the five-year residency requirement should be measured from when the term of office will begin, while the one-year residency requirement should be measured from when the vote is held.

Applying these principles, and based on the particular circumstances of this case, we conclude that Glickman lacked the requisite intent to establish residency for the five years required by our Constitution. A person is permitted to have more than one residence, but is not permitted to have more than one electoral residence. Under the Washington, D.C. law, a "qualified elector" is defined, in part, as one who attests that he or she "[h]as maintained a residence in the District for at least 30 days preceding the next election and does not claim voting residence or right to vote in any state or territory" (DC Code §§ 1-1001.02 [2] [C]; 1-1001.07 [a] [2]). Thus, when Glickman registered to vote in Washington, D.C., he was required to attest that Washington, D.C. was his sole electoral residence and that he did not maintain voting residence in any other state. These factors clearly demonstrate that Glickman broke the chain of New York electoral residency which did not recommence until he registered to vote in New York in 2015. Thus, he cannot claim New York residency for the past five years as required by the State Constitution, and Supreme Court properly invalidated the designating petitions on that basis.

In light of this determination, it is unnecessary to address objectors' remaining contention.

Accordingly, the order of the Appellate Division, insofar as appealed from, should be reversed, without costs, and the order of Supreme Court reinstated.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

Order insofar as appealed from reversed, without costs, and order of Supreme Court, Albany County, reinstated.  Opinion Per Curiam. Chief Judge DiFiore and Judges Pigott, Rivera, Abdus-Salaam, Stein, Fahey and Garcia concur.


Decided August 23, 2016