Matter of Dilan v Salazar (2018 NY Slip Op 05805)





Matter of Dilan v Salazar


2018 NY Slip Op 05805


Decided on August 22, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 22, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
RUTH C. BALKIN
SANDRA L. SGROI
HECTOR D. LASALLE, JJ.


2018-09499
 (Index No. 700010/18)

[*1]In the Matter of Martin Malave Dilan, et al., appellants,
v
Julia Salazar, et al., respondents.




DECISION & ORDER
In a proceeding pursuant to Election Law § 16-102, inter alia, to invalidate a petition designating Julia Salazar as a candidate in a primary election to be held on September 13, 2018, for the nomination of the Democratic Party as its candidate for the public office of New York State Senator for the 18th Senatorial District, the petitioners appeal from a final order of the Supreme Court, Kings County (Edgar G. Walker, J.), dated August 9, 2018. The final order, after a hearing, denied the petition, inter alia, to invalidate the designating petition and dismissed the proceeding.
ORDERED that the final order is affirmed, without costs or disbursements.
The petitioners, Martin Malave Dilan, as a candidate aggrieved, and Helene Leonardi, as a citizen objector, commenced this proceeding to invalidate the petition designating Julia Salazar as a candidate for the nomination of the Democratic Party as its candidate for the public office of New York State Senator for the 18th Senatorial District, alleging that she fails to meet the durational residence requirement set forth in the New York Constitution (see NY Const, art III, § 7). The Supreme Court denied the petition and dismissed the proceeding, and both petitioners appeal.
We agree with the Supreme Court's determination that Leonardi lacks standing to maintain this proceeding in that, as a citizen objector, she never filed specifications of objections with the Board of Elections in the City of New York (see Election Law § 6-154[2]; Matter of Korman v New York State Bd. of Elections, 137 AD3d 1474, 1475; Matter of Bennett v Justin, 77 AD2d 960, 961, affd 51 NY2d 722). In addition, the court properly denied the petition and dismissed the proceeding on the merits insofar as asserted by Dilan.
The New York Constitution provides that no person may serve as a member of the Legislature "unless he or she is a citizen of the United States and has been a resident of the state of New York for five years" immediately preceding his or her election (NY Const, art III, § 7; see Matter of Glickman v Laffin, 27 NY3d 810, 814). The five-year period must be continuous (see Matter of Glickman v Laffin, 27 NY3d at 815; Matter of Bourges v LeBlanc, 98 NY2d 418, 420).
The Election Law defines the term "residence" as "that place where a person maintains a fixed, permanent and principal home and to which he [or she], wherever temporarily located, always intends to return" (Election Law § 1-104[22]; see Matter of Stewart v Chautauqua County Bd. of Elections, 14 NY3d 139, 146; People v O'Hara, 96 NY2d 378, 384; Matter of Weiss v Teachout, 120 AD3d 701; Matter of Willis v Suffolk County Bd. of Elections, 54 AD3d 436, 437). Thus, "[a]s used in the Election Law, the term residence' is synonymous with domicile'" (Matter of Stavisky v Koo, 54 AD3d 432, 434; see Matter of Weiss v Teachout, 120 AD3d at 702). The "crucial determination whether a particular residence complies with the requirements of the Election Law is that the individual must manifest an intent [to reside there], coupled with physical presence without any aura of sham'" (People v O'Hara, 96 NY2d at 385, quoting Matter of Gallagher v Dinkins, 41 AD2d 946, 947, affd 32 NY2d 839; see Matter of Glickman v Laffin, 27 NY3d at 815; Matter of Palla v Suffolk County Bd. of Elections, 31 NY2d 36, 47).
The party challenging residence has the burden of establishing the failure to meet constitutional residency requirements by clear and convincing evidence (see Matter of Glickman v Laffin, 27 NY3d at 815, citing Matter of Weiss v Teachout, 120 AD3d at 702; Matter of Chaimowitz v Calcaterra, 76 AD3d 685, 686; Matter of Willis v Suffolk County Bd. of Elections, 54 AD3d at 437; Matter of Fernandez v Monegro, 10 AD3d 429; Matter of Camardi v Sinawski, 297 AD2d 357, 358; Matter of Rosenthal v Kelly, 275 AD2d 429). The question of residence is a factual one, dependent upon a variety of factors and the particular circumstances presented (see Matter of Glickman v Laffin, 27 NY3d at 815; Matter of Chaimowitz v Calcaterra, 76 AD3d at 686).
According to the testimony adduced at the hearing, Salazar grew up in Jupiter, Florida, where she attended high school. She obtained a Florida driver license in 2006 when she was still a teenager, and registered in March 2008 to vote in Jupiter, Florida. She last voted in Florida in August 2010. Salazar began attending college in New York in August 2009. During the winter break, and at the conclusion of the spring semester in 2010, she returned to Florida, undertook employment there, and remained there until the summer of 2011, resuming her college studies in New York in the fall semester. Salazar testified that she has resided continuously in New York State since her return to New York in the summer of 2011, returning to Florida only for periodic, brief visits. She testified that she made a brief visit to Florida in 2013, did not recall visiting in 2014, probably visited in 2015 and 2016, and made visits in 2017 and 2018 of not more than 10 to 20 days in each year. She further testified that she did not have any personal belongings in Florida, received no mail there, had entered into leases for residences in New York, and had been employed in New York. Salazar's testimony was supported by considerable documentary evidence, including tax and payroll records from 2013 through 2017 that reflect earnings in New York and are directed to her at residential addresses in New York, and including her residential leases, bank and health insurance records, rent and mover's bills, and travel records. Salazar's testimony was also corroborated by the testimony of her roommate, who stated that she had resided with Salazar in various apartments in New York since September 2013 and that Salazar was never away for more than one or two weeks.
The burden in this proceeding is not on Salazar to establish residency, but rather, upon Dilan to establish by clear and convincing evidence that Salazar does not meet the residency requirements established by article III, § 7 of the New York Constitution. The Supreme Court's determination that Dilan failed to meet the burden is warranted by the facts (see NY Const, art III, § 7; Election Law § 1-104[22]; People v O'Hara, 96 NY2d at 385; Matter of Newcomb, 192 NY 238, 250; Matter of Weiss v Teachout, 120 AD3d at 702; Matter of Chaimowitz v Calcaterra, 76 AD3d at 686; Matter of Willis v Suffolk County Bd. of Elections, 54 AD3d at 437; Matter of Stavisky v Koo, 54 AD3d at 434; Matter of Rosenthal v Kelly, 275 AD2d 429).
In an effort to show that Salazar did not meet the five-year continuous residency requirement, Dilan relies upon the fact that Salazar's Florida voting registration was not canceled until July 2017. Under Florida law, a voter must be a legal resident of the State (see Fla Stat Ann § 97.041[1][a][3]), which means place of domicile or permanent abode, as distinguished from temporary residence (see Herron v Passailaigue, 92 Fla 818, 827-828, 110 So 539, 543). Since Salazar last voted in Florida in August 2010, her failure to change her voter registration after she returned to New York in August 2011 does not preclude her from asserting that she changed her electoral residence after she last voted in Florida.
This case is distinguishable from Matter of Glickman v Laffin (27 NY3d 810), where the candidate registered to vote in Washington, D.C., in the midst of the five-year period. By registering in Washington, D.C., the candidate attested in accordance with local law that [*2]Washington, D.C., was his residence for at least 30 days prior to the election and that he was not claiming a voting residence or right to vote in any other state (see id. at 816). Hence, by his act of registration alone, the candidate "broke the chain of New York electoral residency" (id.). Here, by registering in Florida in March 2008, Salazar attested to then being a Florida resident and may be said to have reconfirmed that attestation by voting in Florida in August 2010. However, that she is deemed to have been a Florida resident in August 2010 does not preclude her subsequent commencement of a chain of continuous New York residence approximately one year later in the summer of 2011 (cf. Matter of Thompson v Hayduk, 45 AD2d 955, affd 34 NY2d 980 [candidate broke the chain by registering and voting in another jurisdiction during the applicable period]).
Salazar testified that she registered to vote in New York in 2010 and that her registration was purged in 2015. She also testified that she filled out a voter registration form in 2015 but failed to mail it. Salazar did register to vote in New York in June 2017.
Dilan also relies on the fact that in August 2016, Salazar went to the Florida motor vehicle authorities and renewed her Florida driver license, which had expired in 2012. Salazar explained at the hearing that she had done so while she was visiting Florida to celebrate her mother's birthday, because she perceived that, if she had applied in New York, she would have had to take a road test, and she did not need to take such a test to renew her expired license in Florida. Salazar could not recall driving a car in New York in the past five years.
That Salazar did not change her voting registration from Florida to New York until 2017 and renewed her Florida driver license in 2016, with both her Florida voting registration and Florida driver license reflecting her former Jupiter residence where her mother still resides, are facts which tend to support Dilan's claim that Salazar lacks the requisite five years of continuous residence. In addition, Salazar's voter registration in New York in 2010 is contradicted by her voting in Florida that year. These facts, however, only present ambiguities in the residency calculus, and the evidence, considered as a whole, falls far short of that required for Dilan to meet his burden of demonstrating lack of residency by clear and convincing evidence (see Matter of Weiss v Teachout, 120 AD3d at 702).
Accordingly, we agree with the Supreme Court's determination to deny the petition, inter alia, to invalidate the petition designating Salazar as a candidate in a primary election to be held on September 13, 2018, for the nomination of the Democratic Party as its candidate for the public office of New York State Senator for the 18th Senatorial District, and to dismiss the proceeding.
SCHEINKMAN, P.J., BALKIN, SGROI and LASALLE, JJ., concur.
ENTER: Aprilanne Agostino Clerk of the Court